MARK M. COAD, APPELLEE, V. HOME CATTLE CO. ET AL., APPELLANTS.

[FILED SEPTEMBER 15, 1891.]

1. **Interest:** LEX LOCI.  A promissory note was dated and executed at Cheyenne, Wyoming, and, by its terms, was payable there. The maker was a Wyoming corporation, having most of its property and transacting the greater part of its business in Nebraska. The payee was a resident of Wyoming.  The note provided for interest at fifteen per cent per annum, which was lawful in Wyoming when the note was made.   The note was given for a loan of money and was secured by mortgages executed in Wyoming on certain property of the corporation situated in this state.   The

payee and mortgagee refused to pay the money until he examined the records in this state to see if the property was clear from incumbrances. On making examination and finding no liens, the money was paid over in this state and the note and mortgages delivered here. There was evidence tending to show that the agreement for the loan was made in good faith in Wyoming, and not as a device for securing interest in excess of that allowed by the laws of this state. The finding of the district court, that the note is a Wyoming contract, and its validity is not governed by the laws of Nebraska, upheld.

2. Chattel Mortgages: OPTION TO FORECLOSE ON DEFAULT OF INTEREST SUSTAINED. A mortgage contained a provision that in case of default in the payment of any interest for the space of three days, after the same becomes due and payable, the whole debt should, at the option of the mortgagee, become due and payable forthwith. *Held*, That the mortgagee, in case of a default in payment of interest for three days, may elect to declare the entire debt due, and bring an action to foreclose the mortgage.

3. ———: FORECLOSURE: SALE: POSTPONEMENT: PUBLICATION. When a chattel mortgage sale is postponed, notice of such adjournment, in case a newspaper is published in the county where the sale is to take place, and the adjournment is for a sufficient length of time to permit, must be published in the paper in which the original notice of sale was given, and be continued therein in each issue of the paper until the day of sale.

4. ———: SALE FOR LESS THAN VALUE: ACCOUNTING. A mortgagee of chattels must comply substantially with the requirements of the statute in foreclosing a chattel mortgage. If he fails so to do in an essential particular, and the property is sold for less than its value, the mortgagor is entitled to have the value of the property applied to the extinguishment of the debt, and if such value is greater than such debt, the mortgagee is liable to the mortgagor for the difference.

5. Continuance: REVIEW. To review an order denying a continuance it is necessary to take an exception to the ruling in the trial court.

APPEAL from the district court for Cheyenne county. Heard below before MORRIS, J.

*John C. Cowin, Heist & Raynor, Thomas Kane,* and *W. C. Reilly,* for appellants, cited, as to usury and the incep-

tion of the contract: Tyler, Usury, 83; *Miller v. Tiffany*, 1 Wall. [U. S.], 298; *Andrews v. Hoxie*, 5 Tex., 171; *Pratt v. Adams*, 7 Paige [N. Y.], 615; *Berrien v. Wright*, 26 Barb. [N. Y.], 208; *Roberts v. McNeely*, 7 Jones [N. Car.], 506; *Parham v. Pulliam*, 5 Caldw. [Tenn.], 497; *Vail v. Heustis*, 14 Ind., 607; *Marvin v. McCullum*, 20 Johns. [N. Y.], 288; *Hall v. Wilson*, 16 Barb. [N. Y.], 548; *Armstrong v. Toler*, 11 Wheat. [U. S.], 258, 271; *Curtis v. Leavitt*, 15 N. Y., 9, 53, 178; *Jewell v. Wright*, 30 Id., 259; *Elston v. Kelly*, 34 Minn., 409; *Scott v. Lloyd*, 9 Pet. [U. S.], 418; *Evans v. Negley*, 13 S. & R. [Pa.], 218; *Chamberlain v. McClurg*, 8 W. & S. [Pa.], 31; *Fitzsimons v. Baum*, 44 Pa. St., 32, 40–2; *Sands v. Smith*, 1 Neb., 110; *Hewitt v. Dement*, 57 Ill., 500. As to the option to declare the mortgage due: *Edgerton v. Peckham*, 11 Paige [N. Y.], 357; *Seton v. Slade*, 7 Vesey [Eng.], 273–4. As to the chattel mortgage sale: *Flanders v. Chamberlain*, 24 Mich., 305; *Eslow v. Mitchell*, 26 Id., 500; *Ashworth v. Dark*, 20 Tex., 824; Herm., Chat. Mortg. 474, 499; *Wilson v. Little*, 2 N. Y., 443; *Allen v. Dykers*, 3 Hill [N. Y.], 596; *Dykers v. Allen*, 7 Id., 497; *Johnson v. Stear*, 15 C. B. [N. S. Eng.], 330; *Vincent v. Conklin*, 1 E. D. Smith [N. Y.], 203; Jones, Chat. Mtgs., 708, 710, 730, 793, 795; *Loeb v. Milner*, 21 Neb., 392; 6 Wait, Act. & Def., 196; *Simpson v. Carleton*, 1 Allen [Mass.], 109; *Botsford v. Murphy*, 11 N. W. Rep. [Mich.], 376; *Denny v. Faulkner*, 22 Kan., 89; *State v. Roberts*, 37 Id., 437; *Kopmeirer v. O'Neil*, 3 N. W. Rep. [Wis.], 367; *Black v. Howell*, 56 Ia., 630; *Lee v. Mason*, 10 Mich., 403; *Doyle v. Howard*, 16 Id., 261; 2 Jones, Mtgs., sec. 1827; *Shillaber v. Robinson*, 97 U. S., 68; *Hall v. Towne*, 45 Ill., 493; *Stoddard v. Denison*, 7 Abb. Pr. [N. Y.], N. S., 309; *Bird v. Davis*, 14 N. J. Eq., 467; *Freeman v. Freeman*, 2 Green [N. J. Eq.], 44; *Sandford v. Flint*, 24 Mich., 26; *Soule v. Ludlow*, 6 T. & C. [N. Y.], 24; *Longwith v. Butler*, 8 Ill., 32; *Stoddard v. Denison*, 7 Abb. Pr. [N. Y.], N. S., 309; *Dana v. Far-*

*rington*, 4 Minn., 335; *Howard v. Ames*, 3 Met. [Mass.], 308; *Hungate v. Reynolds*, 72 Ill., 427.

*F. I. Foss, contra:*

The place of delivery has nothing to do with the contract, the *lex loci contractus* and place of performance being the things which control. (Jones, Mtgs., secs. 102, 113; *Sands v. Smith*, 1 Neb., 108.) The mortgagee of a chattel always has the right of possession as against the mortagor. (Jones, Mtgs., 426, 453.) There had been four defaults in interest, showing the mortgagee that his security was likely to be squandered, and it was his duty to take the property and protect his interests. (Jones, Mtgs., 632, 637.) As to the question of usury: 7 Wait, Act. & Def., 623 and cases; *Savings Inst. v. Blair*, 116 U. S., 205; *Lloyd v. Scott*, 4 Pet. [U. S.], 205; *Bank v. Waggener*, 9 Id., 378. As to the continuance: *Jameson v. Butler*, 1 Neb., 117; *Billings v. McCoy*, 5 Id., 190; *Johnson v. Dinsmore*, 11 Id., 394; *Williams v. State*, 6 Id., 337; *Ingalls v. Nobles*, 14 Id., 273; Jones, Chat. Mtgs., 632–634, 635.

NORVAL, J.

This suit was brought by the appellee in the district court of Cheyenne county to foreclose a real estate mortgage executed by the Home Cattle Company. The State Bank of Sidney, being a subsequent mortgagee, was joined as party defendant.

The court found that there was due the plaintiff on his note and mortgage the sum of $6,339.07, and that the same was a first lien on the real estate mentioned in the petition. The court also found that there was due the State Bank of Sidney, on its mortgage from the Home Cattle Company, the sum of $6,208, and the same was a second lien. A decree of foreclosure and sale was rendered, from which the defendants appeal.

On the 28th day of April, 1883, the Home Cattle Company was incorporated under the laws of the territory of Wyoming, with authority to carry on a general live stock business in the territories of Wyoming, Montana, and Dakota, and in the states of Colorado and Nebraska, with its principal place of doing business at Cheyenne, Wyoming. Subsequently the company acquired property in Cheyenne county, Nebraska, where most of the business of the company was transacted, and where the greater portion of its property was situated.

On the 19th day of August, 1884, the appellee loaned the Home Cattle Company $12,000, for which amount it executed a promissory note, due November 1, 1886, payable to M. M. Coad at the banking house of Morton E. Post & Co., Cheyenne, Wyoming, drawing interest at fifteen per cent per annum from date. The interest was made payable semi-annually at said bank. To secure the payment of the note the proper officers of the company executed and delivered the real estate mortgage in suit, and a chattel mortgage upon all of the personal property owned by the company.

One of the defenses presented by the answer of the Home Cattle Company is usury. That the full amount, for which the note was given, was paid by the plaintiff, is not denied. But the appellants insist that the loan was made in this state, and as the note specifies on its face a higher rate of interest than is allowed by the laws of Nebraska, the contract is usurious. The plaintiff contends that this was a Wyoming contract and is not governed by the laws of Nebraska. It is conceded that the note is not usurious under the laws in force in Wyoming at the date of its execution.

At and prior to the making of the loan the plaintiff was a resident of Cheyenne, Wyoming. The board of directors of the Home Cattle Company held a meeting at Cheyenne on the 18th day of August, 1884, at which the following resolution was adopted:

" *Resolved,* That the company borrow the sum of twelve thousand dollars ($12,000), giving its note therefor payable on November 1, 1886, with interest at the rate of fifteen per cent per annum, the interest to be payable at the end of each and every six months, the said note and interest thereon to be secured by a mortgage upon the company's property, both personal and real; and the president and secretary are hereby authorized and empowered to execute and sign, for the company, such note and mortgage, and that said money be used in the payment of the debts of said company, some of which are in judgment against the company, and others are long overdue accounts; surplus, if any, to be applied to the proper purposes for which the company was organized."

In accordance with this resolution the proper officers of the company, on the 19th day of August, in the city of Cheyenne, Wyoming, executed the note and mortgages, the note being dated and payable in Cheyenne. The plaintiff, desiring to look over the property and also to examine the records of Cheyenne county, Nebraska, for the purpose of ascertaining whether there were any liens against the property, the money was not paid out on the loan until six days later. On August 25 Mr. Coad examined the records at Sidney, Nebraska, and finding the property free from incumbrances, he gave Thomas Kane, the president of the company, his check for $12,000, on either a Cheyenne or Omaha bank, and the note and mortgages were delivered to the plaintiff at the same time in Sidney.

The facts, so far as we have stated them, are not disputed by the testimony. It is, however, contended by the appellants, that the contract for the loan was made between the plaintiff and Thomas Kane, the president of the company in this state, prior to the meeting of the board of directors in Cheyenne, and that it was further agreed the note should be executed and made payable in the city of Cheyenne, so that the contract might draw interest at fifteen per cent per

annum, instead of the highest rate allowed by the laws of this state, and that said agreement was made for the sole purpose of evading the usury laws of Nebraska. This was denied by the plaintiff when upon the witness stand. That the note in suit appears on its face to have been executed in Wyoming, and by its terms is payable there; that the maker of the note is a Wyoming corporation, and that the plaintiff, at the time of the making of the loan, and both prior and subsequent thereto, resided in Cheyenne, Wyoming, raise a strong presumption that the contract was made in Wyoming, where the rate of interest specified in the note is lawful, and not that the parties entered into the contract in this state, where the stipulated rate of interest is unlawful. And this presumption will prevail until overcome by clear and satisfactory proof that the contract was made here, and that the note was signed in Wyoming, and was dated and made payable there, as a device for securing usurious interest. Whether the transaction was intended as a means to defeat the usury laws of this state is a question of fact to be determined from the evidence. The trial court found that the contract was made in Wyoming, and upon a careful consideration of the case we are satisfied that the evidence fully sustains the finding, and that the transaction was *bona fide.* There is evidence in the bill of exceptions tending to show that the agreement for the loan was made in Wyoming, and the fact that the note was delivered and the money paid over in this state would not alone make the note a Nebraska contract. It was competent for the parties to adopt the laws of Wyoming, provided they did so in good faith and not for the purpose of evading the usury laws of this state. (*Brown v. Finance Co.,* 31 Fed. Rep. [N. Y.], 516; *Kilgore v. Dempsey,* 25 O. St., 413; *Townsend v. Riley,* 46 N. H., 300; *Miller v. Tiffany,* 1 Wall. [U. S.], 298.)

In the case last cited the court says: "The general principles in relation to contracts made in one place, to be

performed in another, is well settled. They are to be governed by the law of the place of performance, and, if the interest allowed by the place of performance is higher than that permitted at the place of contract, the parties may stipulate for the higher interest without incurring the penalties of usury. The converse of this proposition is also well settled. If the rate of interest be higher at the place of contract than at the place of performance the parties may lawfully contract in that case also for the higher rate. These rules are subject to the qualification that the parties act in good faith, and that the form of the transaction is not adopted to disguise its real character."

The parties having in good faith agreed upon a rate of interest which was lawful at the place where the agreement was to be performed, the contract is valid.

It is urged that the suit was prematurely brought. It was commenced October 23, 1886, while the principal sum, secured by the mortgage, was not due by the terms of the note until November 1st. The mortgage sought to be foreclosed contained this provision: "And it is hereby further provided that in case any installment of principal, or any part thereof, or any interest money, or any part thereof hereby secured to be paid shall remain due and unpaid for the space of three days after the same shall, by the terms thereof, become due and payable, that then, and in that case, the whole principal sum hereby secured to be paid, together with the interest thereon, shall, at the option of the said party of the second part, his executors, administrators, or assigns, become due and payable forthwith, anything herein, or in said note contained, to the contrary notwithstanding."

The evidence shows that four interest payments had fallen due, and not a cent had been paid upon the note. After there had been four defaults of interest payments, the plaintiff exercised his option to declare the whole debt due, by taking possession of the personal property under

the chattel mortgage, which contained a provision similar to the stipulation in the real estate mortgage quoted above. The chattels were sold, the proceeds applied upon the note, and afterwards this suit was brought. The mortgagor being in default, the plaintiff, under the stipulations in the mortgages, had a right to declare the whole debt due, and commence foreclosure proceedings. (*Pope v. Hooper*, 6 Neb., 178; *Fletcher v. Daugherty*, 13 Id., 224; *Lowenstein v. Phelan*, 17 Id., 429.) Before the bringing of this suit the plaintiff brought an action of replevin against the defendant, and under the writ obtained possession of all the mortgaged chattels which could be found. The defendant was thereby as fully advised that the plaintiff exercised his option to declare the principal sum due as if formal notice of his election had been given.

It is next contended that the chattel mortgage sale is void on account of the failure to give the statutory notice of the time and place of sale, and for that reason the defendant is entitled to a credit on the note for the value of the chattels taken under the mortgage, instead of the amount realized at the chattel mortgage sale.

The first notice of the chattel mortgage sale was published in the Sidney *Democrat* on the 20th day of August, which fixed the day of sale on the 9th day of September, 1886. For some cause, probably for the reason that less than twenty days intervened between the publication and day fixed for the sale, the notice was corrected in the issue of the paper of the next week by changing the day of sale to September 18, which notice was published for three successive weeks. On the 17th day of September the same notice, with the addition that the sale was adjourned to September 30, appeared in the issue of the same paper. On the 24th day of September, the day on which the paper was regularly issued, no notice of said sale nor its adjournment was published or given. On the 1st day of October the notice of sale was again published in said newspaper,

51

with a notice that the sale was adjourned until October 20. This notice was published in each issue of the paper prior to October 20, at which date the sale took place. There appears to have been good and sufficient reason for the frequent adjournments of the sale. When the notice of sale was being given, the property, consisting chiefly of cattle and wild, unbroken horses, was running at large upon the range, and owing to the inability of the mortgagee to collect the stock together in time, the sale was postponed. But, as already stated, notice of the postponement of the sale, for some cause not disclosed by the record, was not published each week until the day of sale, but was omitted from the issue of the paper of September 24.

Section 3 of chapter 12, Comp. Stats., relating to foreclosure of chattel mortgages, provides that " Notice that such mortgage will be foreclosed by a sale of the mortgaged property, or some part thereof, shall be given as follows: By advertisement published in some newspaper printed in the county in which such sale is to take place, or in case no newspapers are printed therein, by posting up notices in at least five public places in said county, two of which shall be in the precinct where the mortgaged property is to be offered for sale, and such notices shall be given at least twenty days prior to the day of sale."

Section 4 prescribes what the notice shall contain.

Section 5 provides that " such sale may be postponed from time to time by inserting a notice of such postponement, as soon as practicable, in the newspaper in which the original advertisement was published, and continuing such publication until the time to which such sale is to be had, by posting a notice of such adjournment in some conspicuous place at the place designated in the original notice posted for said sale to be had."

The language of section 5 is clear and explicit, to the effect that where a chattel mortgage sale is adjourned notice of such postponement, in case a newspaper is published

in the county where the sale is to take place and the adjournment is for sufficient length of time to permit, must be published in the paper in which the original notice of sale was given, and be continued therein in each issue of the paper until the day of sale. The provisions of the statute relating to foreclosure of chattel mortgages are mandatory and must be followed, unless waived by the mortgagor. If the mortgagee can disregard the directions of the statute by omitting to give notice of the postponement of a sale for one week, he can, with equal propriety, omit all notice of sale. The mortgagor has an equity of redemption in the mortgaged chattels, and to extinguish the same the mortgagee must comply substantially with the requirements of the statute. If he fails so to do and the property is sold for less than its value, the mortgagor is entitled to have the value of the property applied to the extinguishment of the debt, and if such value is greater than the mortgaged debt, the mortgagee is liable to the mortgagor for the difference. The plaintiff not having complied with the statute in regard to notice of the sale, must account for the full value of the property which came into his possession.

Having disposed of this branch of the case, the next question presented by the record is one of fact, relating to the value of the property. The testimony bearing upon that issue is conflicting. The first witness called by the defendants was Thomas Kane, the president of the company. He placed a value upon each chattel, and a careful computation of the same shows the aggregate valuation of the property as estimated by this witness to be over $34,000. No other witness called by the defendant attempted to place a valuation upon the property as a whole nor upon each item separately. Several of the defendant's witnesses testified as to the value of particular chattels, but an examination of their testimony shows that their estimates almost invariably are from one-third to one-half

Coad v. Home Cattle Co.

lower than the valuation placed upon the same property by the witness Kane.

The plaintiff called as witnesses Thomas H. Hicks, George Lang, Frank Ottoway, and James J. Kelly, who appear to have been familiar with the property in the fall of 1886, and acquainted with its value at that time. Each of these witnesses fixed a value upon the different chattels. The aggregate valuation of the entire property, as appears from the testimony of these witnesses, ranges from $11,250 to $11,750, which differs but little from the amount the property brought at the chattel mortgage sale. There was realized at the sale in October, 1886, $10,607.60, and there was property subsequently sold amounting to $447.75. By giving the defendant company credit on the note for the highest valuation placed on the chattels by any witness for the plaintiff, and computing interest on the note according to the terms thereof, it makes the balance due the plaintiff at the date of the rendition of the decree a little more than the amount found by the decree. The conflict in the testimony as to the value of the personalty was settled by the trial court in favor of the plaintiff, which we cannot set aside, without overruling numerous precedents to the effect that the finding of the district court will not be disturbed unless clearly against the weight of the evidence.

Counsel for appellants finally insist that the decree must be reversed because the court below refused to grant their motion for a continuance of the cause. This objection cannot be considered by us for the reason no exception was taken in the district court to the ruling on the motion. The decree is

AFFIRMED.

THE other judges concur.