STATE, EX REL. WILLIAM C. BULLARD ET AL., APPELLANTS, v. EDWARD M. SEARLE, JR., ET AL., APPELLEES.

FILED MARCH 10, 1910. No. 16,044.

1. Statutes: CONSTRUCTION. An act of the legislature requiring all corporations, with the exception of those belonging to certain classes, to file articles of incorporation with the secretary of state and an act establishing a standard of fees for such services are *in pari materia,* and should be construed together.

2. ——: ——. Ordinarily an exception in a statute will be held to apply to the clause or sentence immediately preceding it, but

this rule is not unbending, and if a consideration of all statutes bearing upon the subject indicates a different legislative intent, this will prevail over a construction based upon the rules of syntax.

3. Corporations: FILING ARTICLES OF INCORPORATION. The exception of building and loan associations, etc., in section 126, ch. 16, Comp. St. 1907, examined, and *held* to apply to the clause of said section requiring every corporation to file its articles of incorporation in the office of the secretary of state. *Held further*, that such exception does not excuse domestic corporations from filing such articles "with the county clerk in the county in which their headquarters are located."

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed.*

*Alfred G. Ellick*, for appellants.

*William T. Thompson, Attorney General,* and *Grant G. Martin, contra.*

LETTON, J.

The relators herein ask for a writ of mandamus to compel the state banking board to issue to the Prudential Savings & Loan Association, of Omaha, Nebraska, a certificate of approval of the articles of incorporation and of the constitution and by-laws of such association. They allege that they have incorporated said association in conformity with the laws of the state, that the articles of incorporation, constitution and by-laws have been filed with the state banking board and the auditor of public accounts, and that a certificate has been filed with the secretary of state complying with the statute, but that the respondents refuse to issue to the association a certificate of approval and authorization to transact business. It is alleged that the state banking board examined and approved their articles of incorporation and constitution and by-laws as conforming to the laws of the state, and as containing a just and equitable plan for the management of the association's business, but refused to issue a certifi-

cate of approval until the association should file the articles of incorporation with the secretary of state and pay as his fee therefor the sum of $500. These allegations are in the main admitted by the respondents. The cause was heard upon the pleadings by the district court for Lancaster county, which denied the writ because the association had failed to file its articles of incorporation with the secretary of state. Relators have appealed to this court.

The question is purely one of statutory construction. Its determination depends upon the effect to be given to the amendment made in 1897 of section 126, ch. 16, Comp. St. 1895, and to subsequent laws relating to the subject. Prior to the amendment of 1897 the law relating to the filing of articles of incorporation was found in ch. 16, Comp. St. 1895, as follows: "Section 126. Every corporation, previous to the commencement of any business, except its own organization, when the same is not formed by legislative enactment, must adopt articles of incorporation, * * * and have them recorded in the office of the county clerk of the county or counties in which the business is to be transacted, in a book kept for that purpose.

"Section 127. Corporations for the construction of works of internal improvement must also file in the office of the secretary of the state a copy of their articles of association, and the same shall be recorded in a book kept for that purpose.

"Section 132. Any corporation formed without legislative enactment may commence business as soon as its articles of incorporation are filed by the county clerks of the counties, as required by this subdivision, and shall be valid if a copy of its articles be filed in the office of the secretary of state, and the notice required be published within four months from the time of filing such articles in the clerk's office."

Under these provisions a corporation was authorized to commence business as soon as its articles of incorporation were filed in the office of the county clerk. In *Live-*

*sey v. Omaha Hotel Co.*, 5 Neb. 50, 73, it was said, speaking of these sections: "The latter section modifies the former by what may be considered as an explanatory clause, providing that the corporation 'may commence business as soon as the articles of incorporation are filed in the county clerk's office', instead of waiting until they are recorded, and by making the validity of the corporation depend on filing a copy of the articles with the secretary of state, and upon publication of the notice required."

In 1897 section 126 was amended to read as follows: "Section 126. Every corporation, previous to the commencement of any business, except its own organization, when the same is not formed by legislative enactment, must adopt articles of incorporation, and have them filed in the office of the secretary of state and recorded in a book kept for that purpose, and domestic corporations must also file with the county clerk in the county where their headquarters are located, except mutual insurance companies, building and loan companies, loan and investment companies and banking institutions, which shall be filed with the state auditor and state banking board. All mutual insurance companies, building and loan companies and loan and investment companies required by law to file articles with the state auditor, shall file a certificate with the secretary of state, stating the date of filing with the auditor, name and place of business and names of stockholders. Banking organizations incorporated under the laws of this state, that have been approved by the state banking board and that have filed articles of incorporation with said board, shall file a certificate in the office of the secretary of state, stating the date of filing articles with said board, name and place of business and names of stockholders; Provided, that this act shall not apply to mutual fraternal benefit societies or associations"—and sections 126 and 127, as they then existed, were repealed. Section 3, art. II, ch. 83, Comp. St. 1895, relating to fees for the filing of articles of association in the office of

the secretary of state, was as follows: "For receiving and filing articles of association, corporations, or consolidations, bonds, oath of office, each, one dollar. For recording the same, for each one hundred words, ten cents." In 1897 this provision was amended to read as follows: "For filing articles of association, incorporation, or consolidation, domestic or foreign, ten dollars, and if the capital stock authorized by such articles exceeds the sum of one hundred thousand dollars, an additional filing charge of ten cents for each one thousand dollars of stock authorized in excess of one hundred thousand dollars; and he shall also charge for recording such articles, ten cents for each one hundred words contained therein." A fee of $2 was also provided for receiving and filing a certificate of the state auditor or of the state banking board. The changes in the law relative to the place of filing articles of incorporation and in the law relating to the fees to be paid to the secretary of state for filing articles of incorporation and certificates of the state auditor and banking board took place at the same session of the legislature, are in *pari materia*, and must be construed together. They evidence an intention to deal with the whole subject of the place where such articles should be filed, and the fees to be paid for filing them, and fix a fee for the filing of the new certificate required.

It is the contention of the respondents that under section 126, as amended, domestic building and loan associations are required to have their articles of incorporation filed and recorded in the office of the secretary of state, that, in addition to this, the articles must be filed with the state auditor and with the state banking board; and that they are also required to file with the secretary of state the certificate described in this section. The relators construe this statute to mean that such associations are only required to file their articles and other required papers with the county clerk, with the state auditor, and with the state banking board, and that the only

thing which they are required to file with the secretary of state is a certificate stating the date of filing of its articles with the auditor, the name and place of business, and the names of its stockholders. Among the recognized canons of statutory construction are that, in construing amended laws, the old law, the mischief and the remedy must be considered, and, further, that when a general law is in force upon a certain subject, all subsequent laws bearing upon the same subject matter must be considered with the general law as if the two separate acts formed part and parcel of the same amendment, and that acts relating to a special subject modify general laws relating thereto. *Meyer-Cord Co. v. Hill*, 84 Neb. 89; *State v. Omaha Elevator Co.*, 75 Neb. 637. From all enactments upon the same general subject of the organization of corporations generally, and of those belonging to certain excepted classes, we must gather the intent of the legislature, and so construe an ambiguous statute as most certainly to carry out that intent.

In respondents' brief it is argued that the clause in section 126 excepting "mutual insurance companies, building and loan companies, loan and investment companies and banking institutions", etc., limits the clause beginning with the words "domestic corporations." This contention is based upon the principle that exceptions and provisos should be construed with reference to the immediately preceding parts of the clause to which they are attached, unless a contrary intention is evinced by the language of the statute. But this rule is subject to the exception that it must not defeat the intent of the act, and is qualified by the other rules of statutory construction before stated. Ordinarily an exception in a statute will be held to apply to the clause or sentence immediately preceding it, but this rule is not unbending, and if a consideration of all statutes bearing upon the subject indicates a different legislative intent, this will prevail over a construction based upon the rules of syntax. If adopted in respect to section 126, this construc-

tion would excuse domestic mutual insurance companies, building and loan companies, loan and investment companies and banking institutions from filing their articles with the county clerk of the county in which their headquarters are located, and this, we think, could not have been the legislative intention. The purpose of the legislature seems to have been to place full information with regard to the excepted organizations in public offices readily accessible to any one in the county where the business is carried on, and also to make it convenient of access to the banking board, and other interested persons in the capital of the state, and to add to the revenues of the state by increasing the filing fees required of all other corporations.

Respondents also argue that this has been the interpretation of the statute ever since an opinion was given by the attorney general in 1902. There is no proof of this allegation in the answer, and we think it is not so public a matter that we may take judicial notice of it. In cases of doubt, it is very probable that the attorney general would very properly incline to that construction most favorable to the state. It is also probable that until the filing of this case the magnitude of the capital stock of associations previously filed has not been so great as to require the payment of heavy fees, and, hence, has not warranted the institution of litigation to determine the meaning of the law. However this may be, we think that long continuing contemporaneous construction has not been shown sufficient to justify the court in overriding what we believe to be the meaning of the statute.

What was the legislative intent when the change was made in 1897 and in 1899, when the present building and loan law was adopted? The amendment of 1897 relieved the excepted associations of no existing burden, but merely reserved to them privileges which they then possessed, and imposed upon other corporations additional requirements and conditions before they could legally incorporate. When the amendment of 1897 was adopted,

it was the duty of an insurance company to file certain statements in the office of the auditor of state, together with the articles of association and the names of the stockholders, before receiving a certificate authorizing it to do business. Banking institutions were also required to make an annual report to the auditor of their condition, resources and liabilities. In 1895 the state banking board was created, and given power to issue charters to, and to have general supervision over and control of, any and all corporations, partnerships and individuals transacting a banking business.

In 1899, two years after these amendments, the present law relating to building and loan associations was passed. This is a complete meas.ure, treating of the organization, management and powers of all such associations, both foreign and domestic, and providing for the terms upon which they may be permitted to do business, within the state. Laws 1899, ch. 17. The title to this act, among other things, provides: "An act to provide for the organization, government, regulation, examination, reporting, and reorganizing or winding up of the business of associations now or hereafter incorporated under the laws of this state, and which shall be organized within this state for the purpose of raising money to be loaned among its members;  *  *  *  and for the examination of their articles of incorporation, constitution and by-laws, and all amendments thereto, by the auditor of public accounts, state treasurer and attorney general, composing the state banking board, and their certificate of approval, if approved under this act." Section 2 gives the state banking board power "to issue certificates of approval and authorization to, and shall have general supervision over, and control of, any and all associations" so organized. "Section 15. A copy of the articles of incorporation, constitution and by-laws of every such association shall be filed in the office of the state banking board, which board, or any two of the members thereof, shall examine the same carefully, and if they find that

said articles of incorporation, constitution and by-laws conform with the requirements of this act and contain a just and equitable plan for the management of the association's business, they, or any two of them, shall issue to such association a certificate of their approval of such articles of incorporation, constitution and by-laws; but if they, or any two of them, find the provisions of such articles of incorporation, constitution and by-laws to be unjust or inequitable or oppressive to any class of shareholders, they shall withhold their approval." This section further provides for like approval as to amendments. Section 22 requires existing associations to comply with the provisions of the act by filing a certified copy of its articles of incorporation, constitution and by-laws with the state banking board, unless such copy shall have been filed with the auditor of public accounts prior to the time the act took effect. Sections 24a, b, c, d, require similar filing with the state banking board as to a foreign association of its charter, or articles, and constitution and by-laws, the laws of the foreign state, and a sworn statement as to its financial condition, whereupon, if approved, the banking board may grant annually certificates giving such foreign association leave to transact business for the current year.

Construing section 126, as amended in 1897, with these provisions of the building and loan act of 1899, we think it was the intention of the legislature to place the entire control of such associations in the hands of the state banking board. As a measure of precaution, it also required their articles of incorporation to be filed with the state auditor, as well as with the state banking board, presumably for the reason that the state auditor is a constitutional officer, the tenure of whose office does not depend upon a mere legislative act, while the banking board, being the creature of statute, might at any session of the legislature be abolished. The information furnished by the filing of the articles of incorporation, the constitution and the by-laws of the association is neces-

sary to the state banking board in its control of the business of such associations, and, hence, the law requires that they must be filed with that board, and also with a constitutional officer of a fixed tenure of office. Publicity is given; for a person seeking information at the office of the secretary of state, as he naturally would do under the provisions of the former acts, would find a certificate on file showing that these documents had been filed with the state auditor, the date of filing the same, and the names of the stockholders. The act of 1899 relating to the organization of insurance companies is further evidence of this intention, though afterwards declared invalid. We can see no reason in requiring the articles to be filed with the secretary of state; another copy to be filed with the state auditor, and still another copy to be filed with the state banking board, and, in addition to these filings, to require a certificate to be filed with the secretary of state showing the filing of the articles with the auditor; and, unless such an intention of the law is plain, it ought not to be imputed to the legislature. Surveying the whole field of legislation in this regard, we are satisfied that the respondents are not justified in refusing to issue a certificate upon the sole ground that the relators have not paid to the secretary of state the sum of $500 as a filing fee, and filed in his office the articles of incorporation.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

ROSE, J., not sitting.