THE KINNEY LOAN AND FINANCE COMPANY, A CORPORATION, APPELLANT, v. GEORGE SUMNER, APPELLEE.

65 N. W. 2d 240

Filed July 2, 1954. No. 33521.

McGinley, Lane, Powers & McGinley, Van Pelt, Marti & O'Gara, and Warren K. Dalton, for appellant.

Firmin Q. Feltz and Robert A. Nelson, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, The Kinney Loan and Finance Company, a Colorado corporation, brought this action against defendant George Sumner, now a resident of this state, to replevin a described trailer coach. Defendant's general demurrer to plaintiff's amended petition was sustained, and plaintiff, electing to stand thereon, judgment was rendered in favor of defendant against plaintiff for return of the property taken, or for its value.

Therefrom plaintiff appealed, assigning that the trial court erred in so doing. We sustain the assignment.

In Freeman v. Elder, 158 Neb. 364, 63 N. W. 2d 327, this court recently reaffirmed that: "A general demurrer admits all allegations of fact in the pleading to which it is addressed, which are issuable, relevant, material, and well pleaded; but does not admit the pleader's conclusion of law or fact.

"A general demurrer tests the substantive legal rights of parties upon admitted facts, including proper and reasonable inferences of law and fact which may be drawn from facts which are well pleaded. If the petition states facts which entitle the plaintiff to relief, whether legal or equitable, it is not demurrable upon the ground that it does not state facts sufficient to constitute a cause of action.

"In passing on a demurrer to a petition, the court must consider an exhibit attached thereto and made a part thereof, if the allegations stated therein either aid the petition in stating a cause of action or charge facts going to avoid liability on the part of the defendant."

Bearing those rules in mind, we have examined plaintiff's petition which alleged substantially as follows: That plaintiff is a Colorado corporation duly authorized and licensed by that state under its Money Lenders Act of 1913, and Senate Bill No. 47, both effective at all times involved, which are regulatory small loan laws similar in principle to sections 45-114 to 45-158, R. R. S. 1943. Copies of such Colorado laws were attached to and made a part of plaintiff's petition. That on or about May 6, 1953, defendant, being justly indebted to plaintiff on a compromise settlement of a disputed claim, made, executed, and delivered to plaintiff at Greeley, Colorado, his installment promissory note therefor in the amount of $2,712.16, payable at plaintiff's office in Greeley, Colorado, with interest from date until paid, at 2 percent per month, computed upon unpaid balances in installments of $100, to be paid on the 15th day of

each month for 11 months beginning June 15, 1953, with the balance due and payable May 15, 1954. That defendant acknowledged on the face of the note that he had received a statement of the loan in conformity with section 5, chapter 108, 1913 Session Laws of Colorado. Also, on May 6, 1953, defendant made, executed, and delivered to plaintiff at Greeley, Colorado, where performance was to be completed, a chattel mortgage upon the described trailer coach then located in Lexington, Dawson County, Nebraska, as security for payment of the note. A copy of such chattel mortgage, together with certificate of title to the trailer, was delivered to the county clerk of Dawson County on May 8, 1953, whereupon the chattel mortgage lien was noted upon the certificate of title. Copies of the note and mortgage were attached to and made a part of plaintiff's petition. Nevertheless, that defendant wholly failed to pay any part of even the first installment of $100 due June 15, 1953, whereupon, as provided in the note and mortgage, the entire balance became due and payable at once, and plaintiff elected to so declare the whole amount due, and demanded delivery of the trailer to it, which defendant refused to do, and being entitled to foreclose, this action was brought by plaintiff to obtain possession of the trailer and damages.

Assuming as we must upon demurrer, that such note and mortgage were not usurious under the laws of Colorado where they were made and to be performed, and that they were valid under the laws of that state, the sole question presented here for determination is whether or not they are enforceable in this state simply because they both reserved a rate of interest higher than that permitted by law in this state. The trial court concluded that they were not, but we conclude otherwise.

The general rule is that: "While no law has of its own force any effect outside the territory of the state or nation from which its authority is derived, foreign

laws or rights based thereon will, within certain limits, be given effect or enforced everywhere." 15 C. J. S., Conflict of Laws, § 3, p. 833. As stated in § 3, p. 836: "Foreign law or rights based thereon are frequently given effect or enforced under the doctrine of comity under which such recognition or enforcement is permitted." However, as stated in § 4, p. 853: "It is thoroughly established as a broad general rule that foreign law or rights based thereon will not be given effect or enforced if opposed to the settled public policy of the forum." See, also, Restatement, Conflict of Laws, § 612, p. 731; Midland Savings & Loan Co. v. Henderson, 47 Okl. 693, 150 P. 868, L. R. A. 1916D 745, with annotation at p. 750.

Ordinarily, also, in the absence of any statute requiring the application of a contrary rule: "Usury laws are not so distinctive a part of the public policy of the forum that the courts will, on the ground of public policy, decline to enforce any contract which would be invalid, if tested by them, though valid according to its proper law." 11 Am. Jur., Conflict of Laws, § 156, p. 458. As stated in § 158, p. 464: "Contracts which are valid where made do not offend the public policy of a forum, although they provide for a rate of interest which would be usurious with penalizing consequences, even to the extent of forfeiture of principal and interest as to such a contract, if made in the law of the forum." See, also, 66 C. J., Usury, § 33, p. 158; and International Harvester Co. v. McAdam, 142 Wis. 114, 124 N. W. 1042, 26 L. R. A. N. S. 774, a case frequently cited. As stated in 11 Am. Jur., Conflict of Laws, § 159, p. 465: "Where a contract made and to be performed in one state is secured by a mortgage or other lien on land situated in another state, the question as to whether the interest provided for is usurious is generally held to be determined by the law of the former, on the ground that the mortgage is merely collateral to the principal obligation. The rule applies with

respect to chattel mortgages as well as to mortgages on real estate." See, also, Annotation, 125 A. L. R. 497.

This court has in effect recognized the foregoing rules as applied to the general usury laws, and has enforced bona fide contracts which were valid under the laws of the state where made and to be performed. Coad v. Home Cattle Co., 32 Neb. 761, 49 N. W. 757, 29 Am. S. R. 465; Hewit v. Bank of Indian Territory, 64 Neb. 463, 90 N. W. 250, which, upon rehearing reported at 64 Neb. 468, 92 N. W. 741, was reversed upon other grounds.

However, an exception appears to have been judicially adopted by this court in Personal Finance Co. v. Gilinsky Fruit Co., 127 Neb. 450, 255 N. W. 558, certiorari denied 293 U. S. 627, 55 S. Ct. 348, 79 L. Ed. 714, relied upon by defendant. There was also a comprehensive dissenting opinion therein separately reported at 127 Neb. 452, 256 N. W. 511, which followed the general rule of enforceability. The case was comparable in all material respects with that at bar. In the opinion this court said: "It is our view that plaintiff's petition does not state a cause of action, in that, though the assignment may be valid under the laws of the state of Iowa, it is contrary to the settled public policy of this state. Ordinarily, assignments of this character are judged as to their validity by the law of the state where the assignment is made, but if the enforcement of the contract is contrary to the public policy of the state in which its enforcement is attempted, the law of the latter state will prevail. * * * Only slight consideration of circumstances attending this legislation is required to distinguish these laws from the conventional type against usury. The latter were to guard against excessive rates; the former to combat those which were extortionate and oppressive."

Section 45-119, Comp. St. 1929, then effective, provided that licensees might charge the borrower "not to exceed the rate of ten per centum per annum and a brokerage fee of not more than one-tenth of the amount

actually loaned." Also, section 45-120, Comp. St. 1929, provided in part: "No assignment or order for wages shall be valid which contains an amount in excess of the sum borrowed, together with the legal rate of interest and charges as provided herein." Such sections were the basic foundation for that opinion and there were then no specific legislative provisions establishing a public policy relating to the enforceability of loans made outside of this state.

Laws of Nebraska 1941, chapter 90, page 344, amended certain sections and repealed others "relating to the lending of money." Among those repealed were sections 45-119 and 45-120, Comp. St. 1929, and others unimportant here. Portions of such 1941 act were again amended by Laws of Nebraska 1943, chapter 107, page 369, which greatly increased the permissible interest rate. Thus, provisions relating to "installment loans" now appear as sections 45-114 to 45-158, R. R. S. 1943. Such 1943 act included section 9, page 375, now section 45-158, R. R. S. 1943, which provides: "No loan, made outside this state, in the amount or of the value of one thousand dollars or less, for which a greater rate of interest, consideration or charges than is permitted by section 45-138 has been charged, contracted for or received, shall be enforced in this state and every person, in anywise participating therein in this state, shall be subject to the provisions of this act; Provided, that the foregoing shall not apply to loans legally made in any state under and in accordance with a regulatory small loan law similar in principle to this act."

Section 45-137, R. R. S. 1943, provides in part: "Every licensee hereunder may make loans, not exceeding one thousand dollars in principal amount, and may contract for and receive thereon charges at a rate not exceeding thirty-six per cent per annum on that part of the unpaid principal balance on any loan not in excess of one hundred and fifty dollars, thirty per cent per annum on that part of the principal balance on any loan in excess of

one hundred and fifty dollars and not in excess of three hundred dollars, and nine per cent per annum on any remainder of such unpaid principal balance."

In that connection, section 45-138, R. R. S. 1943, specifically incorporated by reference in section 45-158, R. R. S. 1943, provides in part: "No licensee shall directly or indirectly charge, contract for or receive a greater rate of interest than nine per cent per annum upon any loan, or upon any part or all of any aggregate indebtedness of the same person, in excess of one thousand dollars."

It will be noted that plaintiff herein was admittedly duly authorized and licensed to make loans and take security therefor, such as that at bar, under the Money Lenders Act of 1913, enacted by the General Assembly of Colorado, approved April 12, 1913, found at Laws of Colorado of 1913, chapter 108, page 400, and Senate Bill No. 47, enacted by the General Assembly of Colorado, approved February 4, 1943, found at Laws of Colorado of 1943, chapter 121, page 345. The first such Colorado statute relates to the licensing, control, and regulation of persons engaged in the business of making loans wherein a greater rate of interest than 12 percent per annum is reserved, and restricts the same to 2 percent per month on any loan or unpaid balances after any partial payments, which charge "shall cover all expenses, demands, and services of every character, including notarial and recording fees and charges, except upon the foreclosure of the security. The foregoing interest or foreclosure expenses shall not be deducted from the principal of loan when same is made." Its provisions with relation to licensing, bonding, appointment of resident agents, the giving and keeping of records for inspection, making and publishing annual reports, general administrative regulation, and disciplinary enforcement under and by the State Bank Commissioner are similar in material respects with our own statutory requirements.

The second such Colorado statute relates to the licensing, control, and regulation of persons engaged in the business of making loans of $300 or less, and reserving a greater rate of interest than 12 percent per annum. It restricts the same to "not exceeding $3\frac{1}{2}\%$ per month on that part of the unpaid principal balance of any loan not in excess of $150, and $2\frac{1}{2}\%$ per month on any remainder of such unpaid principal balance. * * * Charges on loans made under this Act shall not be paid, deducted, or received in advance. Such charges shall not be compounded; provided that, if part or all of the consideration for a loan contract is the unpaid principal balance of a prior loan, then the principal amount payable under such loan contract may include any unpaid charges which have accrued within sixty days on the prior loan." Its other provisions are more comprehensive in scope, but in all material respects they are comparable with those in the Money Lenders Act of 1913 and our own statutory requirements. In that regard, section 22 of the act specifically provides: "Any loan lawfully made in any other state may be enforced in Colorado."

To meticulously compare each section of such Colorado statutes under which the loan here involved was made with our own relating to installment loans would serve no useful purpose and unduly prolong this opinion. It is sufficient for us to say that they are not identical, but they are "similar in principle" with our own act within the meaning of section 45-158, R. R. S. 1943.

Howell v. Fletcher, 157 Neb. 196, 59 N. W. 2d 359, involved the phrase "a law substantially similar" wherein we held that it "refers to the substance of the remedy thereby afforded." Quoting with approval from Smith v. Mitchell, 185 Tenn. 57, 202 S. W. 2d 979, we said: " 'Now what is meant by statutes being "substantially similar"? We think they are substantially similar when they effectuate the same result * * *.' " See, also, Commercial National Bank of Checotah v. Phillips, 61 Okl. 179, 160 P. 920, citing Sigsbee v. Birmingham, 160 Ala.

196, 48 So. 843, wherein the phrase "any similar law," was defined as one not "precisely like," but "with more or less resemblance."

"Principle" means "a general law or rule adopted or professed as a guide to action; a settled ground or basis of conduct or practice; a fundamental motive or reason of action, esp. one consciously recognized and followed." The Oxford Dictionary, Vol. VII, pt. II, p. 1377. By use of the phrase "a regulatory small loan law similar in principle to this act" in section 45-158, R. R. S. 1943, our Legislature clearly did not mean "identical" or "precisely like," or the statute would be of little use. It meant a regulatory small loan law resembling our own installment loan act in origin, purpose, and result, which licenses, controls, and regulates those engaged in lending money at conventional higher rates of interest in order to combat the reservation of extortionate and oppressive rates.

It will be presumed that our Legislature had knowledge of the opinions of this court in Personal Finance Co. v. Gilinsky Fruit Co., *supra;* Coad v. Home Cattle Co., *supra*; and Hewitt v. Bank of Indian Territory, *supra,* when it enacted Laws of Nebraska, 1943, chapter 107, page 369, approved May 28, 1943, of which section 9 thereof, new section 45-158, R. R. S. 1943, was a part. Halligan v. Elander, 147 Neb. 709, 25 N. W. 2d 13; 59 C. J., Statutes, § 600, p. 1008; 82 C. J. S., Statutes, § 316, p. 540.

Section 45-158, R. R. S. 1943, was doubtless enacted to legislatively define the public policy of this state with regard to the enforceability in this state of loans lawfully made outside this state, and avoid the consequences of Personal Finance Co. v. Gilinsky Fruit Co., *supra.* In that regard, it will be noted that after section 45-137, R. R. S. 1943, considers loans of $1,000 or less, and after section 45-138, R. R. S. 1943, considers loans in excess of $1,000, then section 45-158, R. R. S. 1943, denies enforcement in this state of all loans "made outside this state,

in the amount or of the value of one thousand dollars or less, for which a greater rate of interest, consideration or charges than is permitted by section 45-138 has been charged, contracted for or received, * * *." It then provides, however, by all-inclusive language, without any specific limitation with regard to the amount thereof, that "loans legally made in any state under and in accordance with a regulatory small loan law similar in principle to this act" would be enforced in this state.

As stated in 82 C. J. S., Statutes, § 323, p. 593, citing innumerable authorities from this and other jurisdictions: "In construing a statute, the court must look to the object to be accomplished, the evils and mischief sought to be remedied, or the purpose to be subserved, and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it." In § 381, p. 882, it is said: "Generally, a proviso is a clause engrafted on a preceding enactment for the purpose of restraining or modifying the enacting clause, or of excepting something from its operation which otherwise would have been within it, or of excluding some possible ground of misinterpretation of it, as by extending it to cases not intended by the legislature to be brought within its purview."

"The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as expressed in the statute." 82 C. J. S., Statutes, § 321, p. 560. The same rule applies to a proviso. In that regard, as stated in § 381, p. 885: "A proviso should be construed together with the enacting clause or body of the act, with a view to giving effect to each and to carrying out the intention of the legislature as manifested in the entire act and acts in pari materia. A strict but reasonable construction is to be given to the proviso so as to take out of the enacting clause only those cases which are fairly within the terms of the proviso." As stated in § 381, p. 887: "The operation of a proviso is usually and properly confined to the

clause or distinct portion of the enactment which immediately precedes it, or to which it pertains, and does not extend to or qualify other sections or portions of the statute, unless the legislative intent that it shall so operate is clearly disclosed. * * * However, where necessary to effectuate the legislative intent, a proviso will be construed as applying also to other paragraphs or sections, either preceding or subsequent, or to the entire act in which it appears or to other acts in pari materia." See, also, Pierson v. Faulkner, 134 Neb. 865, 279 N. W. 813. As stated in 82 C. J. S., Statutes, § 381, p. 888: "The appropriate office of a proviso is to restrain or modify the enacting clause, and not to enlarge it or confer a power; but, where from the language employed it is apparent that the legislature intended a more comprehensive meaning, it must be construed to enlarge the scope of the act, or to assume the function of an independent enactment." See, also, 59 C. J., Statutes, §§ 640, 641, p. 1090.

As concluded in State ex rel. Bullard v. Searle, 86 Neb. 259, 125 N. W. 590, and Megan v. Boyd County, 133 Neb. 539, 276 N. W. 160, ordinarily a proviso or exception in a statute will be held to apply to the clause or sentence immediately preceding it, but this rule is not unbending and if a consideration of all statutes bearing upon the subject indicates a different legislative intent, this will prevail over a construction based upon the rules of syntax. See, also, Radil v. Morris & Co., 103 Neb. 84, 170 N. W. 363, 7 A. L. R. 539, and State ex rel. Higgs v. Summers, 118 Neb. 189, 223 N. W. 957, which concluded that the general purpose of a proviso is to qualify the statute in part or in whole, but it is not always so used and may, in the light of related provisions, be merely a conjunction.

In the light of the foregoing rules and circumstances presented in this case, we conclude that the loan here involved came within the purview of the proviso and that, unless there are other defenses thereto, which

are not an issue here, the public policy of this state permits its enforcement in this state.

In Chaffee v. Farmers' Co-Operative Elevator Co., 39 N. D. 585, 168 N. W. 616, the court said: "Public policy is but the manifest will of the state (Jockoway v. Denton, 25 Ark. 625, 634) which must and does vary with the habits, capacities, and opportunities of the public. * * * And when the legislature has spoken and enacted a law embodying a certain principle, the policy is determined. And the courts are not concerned with the wisdom or expediency of the legislation or policy adopted, but are merely concerned with the interpretation of the law for the purpose of ascertaining the intent of the legislature. The only limits upon the legislative power in the establishment of public policy are the restrictions contained in the state and Federal Constitutions." See, also, Black's Law Dictionary (3d ed.), p. 1374, citing numerous authorities.

Our Legislature in enacting section 45-158, R. R. S. 1943, evidently recognized that because of modern transportation and communication facilities, residents of this state and other states carry on frequent interchanges of business, including the borrowing and lending of money by people of one state in another, and that to permit enforcement in this state of bona fide contracts therefor lawfully made and to be performed in another state would not, except as specifically limited therein, be contrary to the public policy of this state.

For reasons heretofore stated, we conclude that plaintiff's petition stated a cause of action, and the trial court erred in sustaining defendant's demurrer thereto and rendering judgment for defendant upon such theory. Therefore, the judgment of the trial court should be and hereby is reversed and the cause is remanded for further proceedings in accord with this opinion. All costs are taxed to defendant.

REVERSED AND REMANDED.