STATE OF NEBRASKA, EX REL. WILLIAM T. PATTERSON,
v. JOHN F. WENZEL ET AL.

FILED MAY 19, 1898. No. 9959.

1. **School Lands: RIGHTS OF LESSEES.** The rights of a lessee of state school lands are to be determined by the law in force governing the leasing of school lands at the date of the execution of his lease.

2. ——: ——. The act of 1879 granting to the lessees of school lands the privilege of purchasing the same at private sale was a mere offer or option to such lessees which the state might withdraw at any time before its acceptance by a lessee whose lease antedated the passage of such act.

3. **Mandamus: NATURE OF REMEDY.** The remedy by mandamus rests upon the legal rights of the relator upon one hand and the legal obligations and duties of the respondent on the other. It cannot be predicated solely upon the equities existing between the parties.

4. **School Lands: RIGHTS OF LESSEES: STATUTES.** By section 1, chapter 71, Session Laws 1897, the state intended to, and did, withdraw from sale all its unsold and unleased school lands, and the school lands leased prior to the taking effect of the act of 1879, the lessees of which had not availed themselves of the privilege of purchasing prior to the taking effect of the act of 1897.

ERROR from the district court of Pawnee county. Tried below before STULL, J. *Affirmed.*

*Conley & Fulton,* for plaintiff in error.

*C. J. Smyth, Attorney General, Ed P. Smith, Deputy Attorney General,* and *John B. Raper, County Attorney of Pawnee County,* for the state.

RAGAN, C.

On May 22, 1875, the state of Nebraska leased to one S. L. Northrop the west half of the northeast quarter of section 36, in township 2 north and range 9 east of the sixth P. M., for a term of twenty-five years from and after January 1, 1876, in accordance with the provisions of chapter 70, General Statutes 1873. William T. Patter-

son is now the state's lessee of this land by virtue of various assignments of the lease from Northrop and those claiming under him. Said land is situate in Pawnee county. On August 10, 1897, Patterson desiring to purchase the same at private sale applied to the county authorities of said county to appraise said lands. The county authorities refused to appraise the lands and Patterson thereupon applied to the district court of said county for a mandamus to compel them to do so. The district court sustained a demurrer interposed by the county authorities to Patterson's application, dismissed the proceeding, and Patterson has filed a petition in error here to review this judgment of the district court.

1. On June 24, 1867, an act providing for the registry of the school lands of the state and for their control and disposition went into effect. This is chapter 70, General Statutes 1873. By section 17 of this act the county commissioners of the several counties of the state were authorized and directed to lease the common school and university lands within their counties upon certain terms and conditions for a term of twenty-five years from the first day of January after the date of such lease. It was in pursuance of this section of the statute that the lease to Northrop was made. Without a review or analysis of this statute, it must suffice to say that it contained no provision by which a lessee of the school lands of the state was given the right or option to purchase at private sale the lands leased by him during the continuance of his lease. So that the only right which Northrop acquired to the land in controversy by virtue of his lease was the right to use and occupy it for twenty-five years from and after the first of January, 1876, upon paying the cash rent reserved by the lease. The legislature of 1877 (see Session Laws 1877, p. 174) passed another act, complete in itself, in reference to the registry, sale, leasing, and general management of the school lands of the state. This act made no reference whatever to the act of 1867, just referred to, and while it provided for the leas-

ing of the school lands of the state, it made no provision
whatsoever for the purchase at private sale of the school
lands of the state by a lessee thereof or by any other per-
son. The legislature of 1879 amended section 19 of the
act of 1877 so as to authorize any lessee of school lands,
upon certain terms and upon compliance with certain re-
quirements, to purchase at private sale the lands of which
he was the lessee at an appraisal fixed thereon by or un-
der the direction of the county authorities. (See Session
Laws 1879, p. 110.) The legislature of 1883 passed an-
other complete act in reference to the registration, sale,
and leasing of the school lands of the state and repealed
the acts of 1877 and 1879 just referred to. This act of
1883, however, retained the provision of the act of 1879
permitting a lessee of school lands of the state to pur-
chase them at private sale. (See Session Laws 1883, p.
302.) The legislature of 1885 passed a complete act upon
the subject of the registry, sale, and leasing of the school
lands of the state and repealed the act of 1883. (See Ses-
sion Laws 1885, ch. 85, p. 335.) This act of 1885 retained
the provision of the acts of 1879 and 1883 authorizing a
lessee of school lands to purchase them at private sale
upon complying with the terms of the act, and the act
was made chapter 80 in the Compiled Statutes of 1895.
The legislature of 1897 passed an act entitled "An act to
amend chapter 80, Compiled Statutes 1895, relating to
school lands and funds, to prevent the further sale of
school lands, and to repeal said original chapter 80, Com-
piled Statutes 1895." (See Session Laws 1897, ch. 71.)
This act deals with the whole subject of the leasing and
sale of the school lands of the state, and by section 1 of
the act it is, among other things, provided that all the
educational lands now owned by, or the title to which
may hereafter vest in, the state shall be registered and
leased, and that none of such lands shall hereafter be
sold, except as specifically provided in the act, and that
nothing in the act shall be construed to violate existing
contracts of sale.

The respondents urge two contentions in support of the judgment of the district court. The first is that at the time the lease in controversy was executed no statute existed which authorized a lessee of the school lands of the state to purchase the same at private sale. As already stated, we concede the correctness of this contention.

A second contention of the respondents is that the provision of the acts of 1879, 1883, and 1885 which authorizes a lessee of school lands to purchase the same at private sale was an option or a privilege granted without consideration to such lessee by the state, and might be withdrawn by it at any time before its acceptance by such lessee; and that by the passage of the act of 1897 the state did withdraw this option given the lessee to purchase, and that as Patterson had not availed himself of the privilege granted him to purchase the land at private sale prior to the time the statute withdrew the option in 1897, he is not now entitled to do so. We think the contention of the respondents correct so far as it relates to lessees of school lands whose leases were executed prior to the taking effect of the act of 1879. The case at bar does not require us to decide whether the state could pass a valid law withdrawing the option to purchase from lessees whose leases were executed after the passage of the act of 1879, and we do not, therefore, decide that question. It is not a debatable proposition that Patterson can claim no greater rights under the lease in controversy than could his assignor Northrop, and that Northrop's rights were fixed and determined by the statutes in force at the time of the execution of his lease in reference to the leasing of school lands. (*State v. Commissioners*, 4 Wis. 432; *State v. Thayer*, 46 Neb. 137; *State v. McPeak*, 31 Neb. 139.) The state did not contract to sell these lands to Northrop, either by the lease which it issued to him or by any statute in force at that time; and if the acts of 1879, 1883, and 1885 had never been passed, then of course he would be in no position to in-

sist that the state should sell him these lands at private sale. By the acts of 1879, 1883, and 1885 the state, without consideration, granted to the prior lessees of its school lands the privilege of purchasing the same at private sale upon certain terms and conditions. We agree with the honorable the attorney general that this was a mere offer which the state might withdraw at any time before its acceptance by a lessee whose lease antedated the option itself.

Counsel for Patterson insist that the state has estopped itself from refusing to sell these lands to him at private sale. In his application for a mandamus Patterson alleges that, relying upon the provisions of the acts of 1879, 1883, and 1885, authorizing lessees of school land to purchase the same at private sale, and intending so to purchase the land in controversy, he made lasting and valuable improvements upon the same by building a stone house thereon and planting a portion of the land to fruit and ornamental trees, etc., and he insists that the state is now estopped from refusing to sell him the land. We do not mean to say that the state may not estop itself by its conduct the same as an individual, but we think there are two answers to the contention as applied to the facts in this record.

Conceding in the first place that the state by the passage of the act of 1879 granted to the holders of school-land leases executed prior thereto the privilege of purchasing such lands at private sale, and that Patterson, relying upon this promise, changed his status and made permanent improvements upon the leased lands, which he would not otherwise have done, still, for aught the record before us discloses, the state gave Patterson a reasonable opportunity to avail himself of the option or privilege granted by the act of 1879 before the act of 1897 went into effect, as the latter act was passed without an emergency clause and three calendar months elapsed after its passage before it took effect.

Again, Patterson comes into court invoking the aid of

the extraordinary remedy of mandamus. This writ is only issued to compel the respondent to perform an act which the law specially enjoins upon him as a duty resulting from an office, trust, or station. Two things must concur ' 1 order that this writ may issue: The party applying for the writ must show that he is invested with the legal right to have the respondent perform the act which he seeks to compel him to perform, and it must also appear that the performance of the act by the respondent is one which the law specially makes it his duty to perform. Where the right of the relator to the writ is doubtful, or where there is a substantial doubt as to its being the legal duty of the respondent to perform the act, the writ will not issue. In other words, the remedy by mandamus must rest upon the legal rights of the relator upon one hand and upon the legal obligations and duties of the respondent upon the other hand. It cannot be predicated solely upon the equities existing between the parties. We conclude, therefore, that by the passage of the act of 1897 the state intended to and did withdraw from sale all its unsold and unleased school lands and the school lands leased prior to the taking effect of the act of 1879, the lessees of which had not availed themselves of the privilege of purchasing such lands prior to the taking effect of the act of 1897. The district court correctly refused the writ of mandamus and its judgment is

AFFIRMED.