JOHN B. STANSER, APPELLEE, V. CHARLES F. CATHER ET AL., APPELLANTS.[*]

FILED NOVEMBER 9, 1909. No. 15,793.

1. School Lands: LEASES: APPRAISEMENT. A lessee of educational land, commonly called school land, whose lease was executed under the laws in force in 1879, is entitled during the existence

---

[*] Rehearing denied. See opinion, p. 313, *post.*

of his lease to have a voice in the selection of the appraisers called to revalue the land described therein. But after the expiration of his lease he is not entitled to that privilege, and if he desires to renew it he must do so under the terms of the act of 1883 (Laws 1883, ch. 74, sec. 19), providing for the manner of appraising leased lands.

2. ———: EXPIRATION OF LEASE: RIGHTS OF LESSEE. After a lessee has allowed his lease to expire by limitation without making an application to renew the same, the only right preserved to him thereby and by law is that he will not be required to compete for contracts, and the rate of rental will remain the same as that stipulated in his old contract, based, however, on an appraisement of the land made under the provisions of the present statute.

3. ———: LEASES: APPRAISEMENT. A lease of educational lands executed after the passage of the act of 1883 does not entitle the lessee to a voice in the selection of the appraisers called upon to revalue the land for lease purposes, although such a provision is inadvertently allowed to remain in the printed portion of the lease.

4. Contracts: VALIDITY. The commissioner of public lands and buildings has no power to bind the state by a contract contrary to or in conflict with the statutes in force at the time of its execution.

APPEAL from the district court for Webster county: HARRY S. DUNGAN, JUDGE. *Reversed with directions.*

*William T. Thompson, Attorney General,* and *Bernard McNeny,* for appellants.

*L. H. Blackledge, contra.*

BARNES, J.

Action to quiet title as lessee to certain educational land, commonly called school land, situated in Webster county, and to confirm plaintiff's right to release and retain possession thereof as against a subsequent lessee. Judgment was rendered in favor of the plaintiff, and the defendants have appealed.

It appears that two separate 40-acre tracts of land leased at different times and under different statutory

provisions are involved in this controversy, and they will be considered separately in this opinion.

There are no disputed facts in this case, and it appears that on the 11th day of March, 1879, John B. Stanser, the plaintiff below, leased from the state the northwest quarter of the southeast quarter of section 21, township 1, range 10 west, under the provisions of the statutes then in force. Among other things, the law then provided that school lands leased under its provisions should at the expiration of five years from the date of the lease, and every five years thereafter, be reappraised by three persons, one to be appointed by the county clerk of the county in which the lands were situated, one by the lessee, and the third to be appointed by the other two appraisers. Each new appraisement was to be the basis of rental value for the succeeding five years after the next first day of January. Laws 1877, p. 174. At the time the land above described was leased to the plaintiff it was appraised at the sum of $50 for the whole 40-acre tract, and the lease provided for the payment of an annual rate of 8 per cent. upon that valuation semiannually in advance, so that the amount which the plaintiff was required to pay for the land in question was $4 a year. The land was not reappraised until after the passage of the act of 1883, which took from the lessee all choice in the selection of appraisers. Laws 1883, ch. 74, sec. 19. It was reappraised under the provisions of that act in the year 1903, and was valued at $7 an acre, or $280 for the entire tract. The plaintiff refused to pay his rent based on the new valuation, and the commissioner of public lands and buildings, yielding to his contention that he should only be required to pay the rate of rental provided in his lease until its expiration, accepted such payments until January 1, 1904, at which time the lease expired. Plaintiff was then notified that, if he desired to renew his lease, he would be required to pay a rate of rental based on the new appraisement of $7 an acre. This he refused to do, and insisted that no legal appraisement of the land had

ever been made, claimed the right to appoint one of the appraisers himself, and refused to pay any amount of rent greater than that provided for by his lease until a reappraisement should be made under the provisions of the law which were in force at the time it was executed; that is to say, until the land should be again appraised by three persons, one to be appointed by the county clerk, one by himself, and the third by the other two appraisers. After considerable correspondence, and after the plaintiff had refused to release the land under any other terms or conditions than those above stated, and some two years after the expiration of his lease, the land was finally leased to the defendant Charles F. Cather on his bid of $7.30 an acre, and the plaintiff thereafter commenced this action for the purposes above stated.

It thus appears that the question to be determined is whether or not the plaintiff is entitled to ignore the provisions of the existing law relating to the appraisement of school lands, and demand from the state a new lease under the provisions of the statute recited in his old lease. It is plaintiff's contention that there has been no valid appraisement of the land in question, and, until such appraisement is made, he has the right to demand and receive a new lease based on the same rental as that provided in his old lease, which has long since expired. In support of this contention he cited *State v. McPeak*, 31 Neb. 139, and *State v. Thayer*, 46 Neb. 137. In those cases it was held that, under a lease contract authorized by the statute, the legislature could not deprive the lessee of the right to select an arbitrator to act in conjunction with one selected by the state to appraise the rental value of the land for the succeeding five years. We are in full accord with this rule, but are of opinion that it has no application to the facts of this case. There the lease had not expired. Here plaintiff's lease expired long before any attempt was made to lease the land in question to the defendant Cather. With the expiration of his lease the only right reserved by its terms to plaintiff was that of

.releasing the land without competitive bidding. It is provided by section 16, ch. 80, Comp. St. 1909: "The holders of lease contracts executed prior to July 9, 1897, are hereby given the right, at the expiration of said contracts, to make application for and receive new lease contracts upon said lands, as provided in the preceding section; except, that they will not be required to compete for the contracts and the rate of rental will be the same as stipulated in the old contract; *Provided,* that all of the rental due on the old contracts has been paid." This statute was evidently enacted to promote permanency of interest on the part of the lessee, and to encourage him to improve his leasehold. It gives him a substantial advantage over all strangers to the land. It permits him to renew his lease without competition at the rate of interest he had been paying, while strangers must subject themselves to competitive bids; and the expression "rate of rental" is synonymous with the rate of interest. The testimony discloses that, had the plaintiff made an application in 1904, the commissioner would have gladly executed to him a lease conditioned on his bidding 8 per cent., which was his old rate of rental on an appraisement of $7 an acre. This the plaintiff would not do. If, as contended by him, the appraisement of 1903 was invalid, that fact did not entitle him to release the land at the original appraisement of $50. During the 25 years which elapsed from 1879 to 1904 the land had greatly increased in value, and this plaintiff recognized by bidding for it at auction on a valuation of $2.50 an acre. The commissioner, after offering him every opportunity to again lease and retain possession of the land, finally leased it to defendant Cather, who bid therefor an amount greater than the value fixed by the appraisement of 1903.

By his conduct in thus refusing to comply with the provisions of the law, plaintiff forfeited all of his rights to the tract of land in question, except such as relate to the improvements which he has placed thereon. This question, for lack of evidence, cannot be determined on

this appeal, but may be ascertained in a proper proceeding for that purpose. It follows that the judgment of the district court, so far as it relates to the 40 acres of land above described, must be reversed.

The other tract of land is the northeast quarter of the southeast quarter of section 21, township 1, range 10, and adjoining the 40 acres first above described on the east. It appears that plaintiff leased this 40 on the 8th day of July, 1884, which was after the act of 1883 went into effect, by which it is provided: "During the year 1883, and every five years thereafter, the board of educational lands and funds shall cause all educational lands under lease which in their judgment are appraised too low to be reappraised." Laws 1883, ch. 74, sec. 19. The appraised value of this particular tract of land at the time it was leased was $50 for the whole 40 acres, and the rate of rental which he agreed to pay was 6 per cent. per annum on that valuation. So that he was required to pay as rental for the entire 40 acres the sum of $3 per annum. The record discloses that in the year 1903 the land was reappraised in the manner designated by the board, and was valued at $7 an acre. To this appraisement the plaintiff objected, and refused to pay rent based on that valuation. He tendered the amount of rent based on the appraisement in force when he leased the land, but this the commissioner refused to accept, and, after much correspondence and considerable delay, gave plaintiff notice of the intention of the board to forfeit his lease in case he refused to pay rental based upon the new appraisement. Something over six months after the giving of the notice above mentioned, the board declared the lease forfeited, and later on leased the land to the defendant Cather on a valuation of $7.30 an acre, which was the amount bid by him as the rental basis for his lease.

It appears that at the time plaintiff obtained his lease the commissioner of public lands and buildings was using the old form of lease, which gave the lessee a voice in the selection of the appraisers, and failed, by mistake or in-

advertence, to make the lease conform in that respect to the provisions of the act of 1883, which was then in force. It is now contended by the plaintiff that, the commissioner having executed and delivered to him a lease which contained the provisions of the law which had been repealed by the act of 1883, the state is bound by the contract, and he is entitled to have the land valued for rental purposes by three appraisers, one to be selected by himself, one by the county clerk, and the third by the other two appraisers. We do not see how this contention can be sustained. At the time plaintiff leased the land there was no provision of law which granted him the right to have a voice in the selection of the appraisers called upon to revalue the land described in his lease, and there was no authority vested by law in the commissioner of public lands and buildings to make a contract with the plaintiff granting him such a privilege. Therefore the state is not bound by that part of the agreement.

It is a well-established principle that, if a public officer in performing his ministerial duties acts beyond the express authorization of the law, his acts will be held to be void. The rule is that, where an officer exceeds his powers in the performance of his ministerial duties, "the body for which he acts, whether the state, municipal corporation, or other public organization, is not bound by his acts; and every person dealing with an officer must, at his peril, ascertain the extent of his powers." Throop, Public Officers, sec. 551. In Mechem, Public Officers, sec. 829, it is said: "Every person, therefore, who seeks to obtain, through the dealings with the officer, the obligation of the public, must, at his peril, ascertain that the proposed act is within the scope of the authority which the law has conferred upon the officer." In section 830 of the same work it is further said: "The authority of the officer being a matter of public record or of public law of which every person interested is bound to take notice, there is no hardship in confining the scope of the officer's authority within the limits of the express grant and necessary implication, and such

is the well-established rule. There can be no occasion or excuse in such a case for indulging in presumptions or relying upon appearances, but the authority must be traced home to its source and must be shown actually to exist." After the passage of the law of 1883, the board of public lands and buildings required the county commissioners where leased lands were situated to reappraise them for leasing purposes, and the commissioner had no power or authority to agree with the plaintiff upon a different method of appraisement. The fact that a contrary provision was left in the plaintiff's lease by the commissioner through a mistake or inadvertence conferred upon him no right which would nullify plain statutory provisions. The law entered into and became a part of the contract, and the plaintiff will not be permitted to nullify the statute in the manner attempted in the case at bar. *Morgan v. Hog Raisers Mutual Ins. Co.,* 62 Neb. 446. The record discloses that the board of educational lands and funds was slow to forfeit the plaintiff's lease. He was often urged to comply with the law and the terms of his contract by paying his rent on the basis of the new appraisement. This he persistently refused to do, and stood upon his supposed right to have a voice in the selection of the appraisers who should be called upon to reappraise the land for lease purposes. Finally, as a last resort, the board forfeited plaintiff's lease, and leased the land to the defendant Cather. It therefore follows that the judgment of the district court as to plaintiff's right to retain possession of the last named tract of land must also be reversed.

We are also of opinion that the defendant Charles F. Cather is entitled to the possession of all of the land in question under and by virtue of the leases executed and delivered to him by the state through its commissioner of public lands and buildings. The judgment of the district court for Webster county is therefore reversed and the cause is remanded to that court, with directions to render a decree in accordance with this opinion, preserving to

the plaintiff whatever rights he may have in, or by reason of, the improvements, if any, which he has placed upon the premises.

JUDGMENT ACCORDINGLY.

ROSE, J., not sitting.

The following opinion on motion for rehearing was filed December 23, 1909. . *Rehearing denied:*

PER CURIAM.

Plaintiff, in moving for a rehearing, suggests that the court has misunderstood the record, and has not accurately stated the facts. Complaint is made of so much of the opinion as declares: "The commissioner, * * * after much correspondence and considerable delay, gave plaintiff notice of the intention of the board to forfeit his lease in case he refused to pay rental based upon the new appraisement. *Something over six months after giving the notice* above mentioned, the board declared the lease forfeited."

A careful reexamination of the record discloses that, owing to the multiplicity of notices contained therein, the writer of the opinion was mistaken in stating that the forfeiture was made something over six months from the date of the notice. However, we do not think the mistake a material one, or of sufficient importance to require a rehearing. Our decision did not turn on that point, but was based on the ground that the commissioner could not, either purposely or inadvertently, bind the state by a contract which, in effect, would abrogate the plain provisions of the law relating to the matter of appraisement.

We are satisfied that a rehearing would not change our decision, and it is therefore

DENIED.