State, ex rel. Jehorek, v. McKelvie.

STATE, EX REL. VINCENT JEHOREK, RELATOR, v. SAMUEL R.
MCKELVIE, GOVERNOR, RESPONDENT: CHARLES W.
BRYAN, GOVERNOR, SUBSTITUTED RESPONDENT.

FILED NOVEMBER 26, 1923. No. 22281.

1. **Public Lands:** SALES: LAW GOVERNING. In a sale by the state
   of Nebraska of its common-school lands, the transaction and
   rights of the parties in respect thereto are to be governed and
   determined by the law in force at the time the contract of sale
   was made.

2. ———: BOARD OF EDUCATIONAL LANDS AND FUNDS: POWERS.
   The board of educational lands and funds of Nebraska has only
   such powers as are specifically granted to it by the Constitu-
   tion and statutes of the state, together with such as are neces-
   sarily implied to give effect to those specifically granted.

3. ———: APPRAISAL. In 1917, the statutes of Nebraska fixed and
   determined the manner of appraising the state's common-school
   lands for the purpose of sale. In an appraisal for such pur-
   pose under the statute then in force, in the absence of a show-
   ing to the contrary, the presumption is that the appraisers per-
   formed their duty as the law directs.

4. ———: ACCEPTANCE OF DEED: ESTOPPEL. The acceptance and
   recording by a vendee of a deed from the governor of the state
   of Nebraska, conveying a portion of the state's common-school

lands, and containing mineral reservations, which reservations were unauthorized and invalid, will not estop such vendee from afterwards demanding a proper deed of conveyance without such invalid reservations.

Original proceeding in mandamus to compel respondent to execute to relator a deed to certain school lands. *Writ allowed.*

*Samuel J. Tuttle,* for relator.

*O. S. Spillman, Attorney General,* and *George W. Ayres,* contra.

Heard before MORRISSEY, C. J., ROSE and GOOD, JJ., SHEP-HERD, District Judge.

GOOD, J.

This is an action, originating in this court, for a writ of mandamus, to require the present governor to execute to relator a deed in fee simple absolute for 240 acres of land in Boyd county, Nebraska, formerly a part of the state's common-school lands.

Relator alleges that on the 18th day of July, 1917, the state of Nebraska, in the manner prescribed by the laws of said state, sold to relator the lands in controversy, and that thereafter, and on the 4th day of October, 1917, the commissioner of public lands and buildings issued six sale certificates to said relator for said lands, all identical in form except the description of the land. Each of the certificates was for 40 acres of land and contained the following reservations: "All mineral, coal, oil, gas, potash, sand, gravel, clay, volcanic ash, tripoli, and saline rights are reserved to the state, with the right to prospect for and develop the same." It is further alleged that on the 25th of January, 1921, upon the full performance of all obligations of said sale of lands aforesaid, including the full payment of consideration, the former governor issued a deed conveying said lands to relator, a copy of which is attached to and made a part of the petition, which deed contains the same reservations as the sale certificates; that the said res-

ervations are contrary to any provisions of the law and hostile thereto, and are repugnant to the character of the title agreed to be conveyed to relator at the date of the purchase and payment of consideration; that relator has made a demand upon the governor to execute to him a deed in fee simple and without the reservations referred to.

The respondent admits the sale of the lands by the state of Nebraska to the relator at the time stated; that the certificates and deed were issued to him and contained the reservations, as alleged by relator, and that demand has been made for a deed without such reservations; and for a defense alleges that, at the time the relator received a deed for said lands, to wit, on the 25th day of January, 1921, the Constitution of the state of Nebraska provided and now provides that the sale of salt springs, coal, oil, mineral, or other natural gases, on or contained in the land belonging to the state, shall never be alienated, and that prior to the 18th day of July, 1917, the board of educational lands and funds of the state of Nebraska had, by resolution duly passed, determined that, in all contracts entered into by the state of Nebraska for the sale of its school lands, there should be a clause reserving to the state all mineral, coal, oil, gas, potash, sand, gravel, clay, volcanic ash, tripoli, and saline rights; that, at the time said lands were appraised for the purpose of sale to the relator, the appraisers took into account the reservation of said mineral rights by the state in fixing the value of said lands, and that relator, at the time he purchased the land, well knew that the state was reserving all mineral rights in said lands, and accepted the deed to said lands and recorded the same with knowledge of the reservations therein contained, and that he is thereby estopped to now insist that he is entitled to receive from the state a deed without reservations. The relator has demurred to the answer.

Whether the provisions of the Constitution and statutes of the state, in force when the deed was executed by the former governor to relator, authorized or permitted such reservations as were inserted in the deed is immaterial.

State, ex rel. Jehorek, v. McKelvie.

The transaction must be governed and the rights of the parties determined by the law in force when the contract of sale was made in 1917. At that time there was no provision of law requiring or authorizing the officers of the state, in making sale of the state's common-school lands, to make any such mineral reservations as were attempted to be made in the instant case. There was no law authorizing the board of educational lands and funds of Nebraska to adopt such a resolution as that referred to in respondent's answer. Such board is a creature of law. It has no powers save those granted by the Constitution or statutes, together with such as are necessarily implied to give effect to those specifically granted. The terms and conditions on which the state's common-school lands could be sold were fixed and determined by the law, and the board was powerless to take from or add to these terms and conditions. It is charged that, at the time the lands were appraised for the purpose of sale to relator, the appraisers took into account the reservation of mineral rights by the state, in fixing the value of said lands. The law fixed and determined the manner of appraisal and the duty of appraisers. It required the appraisers to take an oath that they would appraise the lands at their true value, and required that such appraisal must be approved by the board of educational lands and funds before the sale could be made. There was no warrant of law for the appraisers to make any reduction from the true value of the land because of any mineral rights; nor is it alleged that any such reduction was, in fact, made. In the absence of a contrary showing, the presumption is that the appraisers performed their duty as the law directs.

As to the question of estoppel because relator accepted and recorded the deed executed by the former governor and did not bring this action until some months thereafter, it is not made to appear that the state has changed its position in reliance thereon, or that it has been in any wise prejudiced by such action on the part of the relator. The presumption arising from the facts pleaded and admitted

is that the relator paid and the state received the full value of the land. Relator was entitled to a deed conveying full fee simple title without any reservations. The deed of the former governor did not convey to relator the title for which he contracted and paid.

It is argued that mandamus is not the proper remedy, because, in effect, it seeks to try title to lands, and for the further reason that relator has an adequate remedy at law when any attempt is made by the state to assert any mineral rights to the land. We think it is perfectly clear, under the law, that the state has no rights in the land by virtue of the unauthorized and invalid reservations, and no title to land is involved in this controversy. We do not think that relator has an adequate remedy at law. In the event that relator should desire to sell or mortgage his land, as he has a perfect right to do, the reservations in the deed conveying the land to him would materially interfere with such right. He contracted and paid for a fee simple title, and is entitled to a deed that insures him such title.

It follows that the writ should be allowed.

WRIT ALLOWED.