STATE, EX REL. HENRY M. SCHOONOVER, APPELLANT, V. GEORGE M. CRABILL ET AL., APPELLEES.

287 N. W. 669

FILED SEPTEMBER 29, 1939. No. 30564.

*Mothersead & York,* for appellant.

*Frank Glebe, Rush C. Clarke* and *Robert W. Patterson, contra.*

Heard before ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

EBERLY, J.

This in an action of mandamus to compel the county commissioners of Scotts Bluff county, Nebraska, to allow the incorporation of the village of Terrytown. Issues were joined by the return or answer to the alternative writ, and a trial thereof resulted in a finding in favor of respondents and a judgment dismissing relator's proceedings. From the order of the trial court overruling the motion for a new trial, relator appeals.

The territory sought to be incorporated as "Terrytown," somewhat irregular in configuration, consists of a tract of cultivated agricultural land. It may be said that the present boundaries of the city of Scottsbluff are coincident with east, west, and north boundaries of the proposed village of Terrytown. All the "taxable inhabitants" and "actual residents" of this proposed corporation are to be found, and live, in a single row of trailer houses and tar-paper shacks, which, together with one or two houses of more substantial construction, extend from north to south along and adjacent to the north and south public road, which extends over and across the premises and forms in part one of the boundaries thereof. These "improvements" are situated upon "lots"

which are said to be 25 feet in width, which face, are contiguous, and communicate with the public road. No plat as required by our statutes is shown to exist, either recorded or otherwise. Comp. St. 1929, secs. 17-415, 17-426. Though the record is entirely barren of evidence as to the exact dimensions of these lots thus occupied, photographs of the *locus in quo* clearly disclose that the depth of the occupied lots is relatively short, and that the entire tract thus occupied by petitioners constitutes but a small portion, comparatively, of the entire tract described in the petition for incorporation. The testimony of the relator Schoonover, in substance, includes, viz.: That he is one of the petitioners; that he is single and has lived on the land involved "close to three years," and lives in the house on lot number 1; that through Terry Carpenter he was in charge of placing people who came there on the land sought to be incorporated; that people who desired to locate in Terrytown would see Schoonover, and register in a book kept by him; that they were then assigned to lots which they would occupy with their respective shelters, without any further lease or agreement, and wholly without rent or compensation or any obligation to pay the same, either present or in the future; that they remained, however, subject to the will of Terry Carpenter; that if they failed to keep the place assigned to them clean, or failed to get along peaceably with others of the community, they were required to leave; that otherwise the members of this community go where and when they please and without obligation to advise any one of their departure.

It appears that the population is largely transient; that some brought their shelters with them to Terrytown and removed them when they left, and that others arriving purchased their shacks from squatters who had preceded them and were leaving. It also appears that the turnover in the constitutent elements of the population was so great that, between the time of the filing of the petition and the trial of the case, the identity of more than half of the community had changed, and had been replaced by new arrivals; that none of the improvements made was per-

manent, at least to the extent of attaining the classification of real estate; and that numerous of the trailers which were located on these lots when the petition for incorporation was filed were gone when the trial was had, having been removed by their owners at various times in the interim.

While we are not advised as to the nature of the title involved, Terry Carpenter appears in this record as exercising ownership over the premises as an entirety. He is not a party of record to these proceedings. He did not sign or execute the petition for incorporation filed with the board of county commissioners, which furnishes the basis of this lawsuit. His consent in writing or written approval thereof was not submitted to the county board. It appears that the object originally sought to be accomplished in the creation of this community was to provide a refuge for those whom "the city and county sought to eliminate from the places where they were living," and for "people who were being pushed around through fear of the law and fear of what they thought was the power to move them around." It fairly appears that the actual relation sustained to the owners of this land by these so-called "taxable inhabitants" and "actual residents" was not that of landlord and tenant, but rather that of licensor and licensees. The licensees received merely a privilege to occupy under the owner. 35 C. J. 954. Nevertheless, the relator further contends that, under the facts recited, they were entitled to have an order of incorporation entered by the board of county commissioners on their records, as required by section 17-201, Comp. St. 1929, which is, in part, as follows: "Whenever a majority of the taxable inhabitants of any town or village, not heretofore incorporated under any laws of this state, shall present a petition to the county board of the county in which said petitioners reside, praying that they may be incorporated as a village, designating the name they wish to assume, and the metes and bounds of the proposed village, and if such county board or a majority of the members thereof shall be satisfied that a majority of the taxable

inhabitants of the proposed village have signed such petition, and that inhabitants to the number of one hundred or more are actual residents of the territory described in the petition, the board shall declare the proposed village incorporated, entering the order of incorporation upon their records," etc.

Mandamus issues when, and only when, there is a right to decree, and a corresponding duty to perform, the act required; the absence of either of such elements will make its issuance fatal. *State v. Wenzel,* 55 Neb. 210, 75 N. W. 579.

We regard it as elementary that, "Where mandamus is sought, relator must show clearly and conclusively that he is entitled under the law to the particular act or thing desired, and that the respondent is legally obligated to give him what he asks. *State v. Kendall,* 15 Neb. 262; *State v. Wenzel,* 55 Neb. 210; *Laflin v. State,* 49 Neb. 614." *State v. City of Lincoln,* 68 Neb. 597, 94 N. W. 719.

Our original act providing for the organization, government and powers of cities and villages was enacted in 1879. See Laws 1879, p. 191. The legislature of 1881, by the adoption of chapter 22 of the Session Laws of that year, under the title, "An act to amend section forty of an act entitled 'An act to provide for the organization, government and powers of cities and villages,' approved March 1, 1879," added, as an amendment of the act of 1879, the language hereinbefore set forth upon which relator relies. The rule of construction applicable, established by precedent, is, viz.: "An act of the legislature, the sole purpose of which is stated in the title to be to amend a specified section of a complete and comprehensive act, makes the section so amended a part of the original act, which must, if possible, be so construed as to give it a meaning consistent with the whole act." *State v. Coupe,* 91 Neb. 463, 136 N. W. 41.

Further, "The section of an act properly amended should be construed precisely as though it had been originally enacted in its amended form." *State v. Hevelone,* 92 Neb. 748, 139 N. W. 636.

It follows that the language upon which relator relies must be construed in connection with other provisions of the act of 1879, as since amended, in order that it may be given proper force and effect. Thus, we have repeatedly held that strictly agricultural lands are not properly subject to this process of incorporation. Ordinarily, mandamus will not be employed to secure a vain thing.

In the instant case the record establishes that, prior to the denial of the prayer of the petition for incorporation, the members of the board of county commissioners made three separate trips of investigation to Terrytown. They fully examined into the situation. The action of the board thereafter was unanimous in the denial of the prayer of the petition. The statement claimed to have been made by one of the members of the board which, it is insisted, evidenced prejudice or caprice, if made, was wholly unknown to the other two who constituted a majority of such board. Therefore, the fact, if it was a fact, that a single member of the board made it, would not adversely affect the validity of the unanimous action of such board. But this claimed statement is fairly denied by the member of the board who is charged with having made it. Circumstances tend to corroborate him, and the clear preponderance of the evidence is against this claim of relator.

It is equally obvious that the relator has failed to establish his contention by requisite proof, "that inhabitants to the number of one hundred or more are actual residents of the territory described in the petition."

"An actual resident within the meaning of the statute in relation to the incorporation of villages is one who is in a place with the intent to establish there his domicile or permanent residence, or has done so." *State v. Mote,* 48 Neb. 683, 67 N. W. 810.

It thus necessarily involves the idea of permanency, and this, every physical fact in the proof tends to negative. All the facts and circumstances set forth in the record tend to disclose a mere temporary presence by a transient people, who are licensees only. It fails to establish Terry-

town as the place of their actual or permanent residence or domicile. The burden of proving this fact was, by the form of the issues, imposed on relator. He has failed to carry it.

It follows that the judgment of the trial court is correct, and it is

AFFIRMED.