JOE PFEIFER, BEING THE SAME PERSON AS JOE P. PFEIFER, ET AL., APPELLES, V. LENA ABLEIDINGER ET AL., APPELLEES, IMPLEADED WITH STATE OF NEBRASKA, APPELLANT.

89 N. W. 2d 568

Filed April 18, 1958.   No. 34345.

*Clarence S. Beck,* Attorney General, and *Richard H. Williams,* for appellant.

*R. J. Shurtleff,* for appellees Pfeifer.

*Hutton & Hutton,* for appellees Ableidinger.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action in equity brought in the district court for Boyd County by Joe Pfeifer, being the same person as Joe P. Pfeifer, and Martha Pfeifer, as plaintiffs, against Lena Ableidinger, Walter D. Ableidinger, and State of Nebraska, as defendants. The purpose of the action was to quiet title in the plaintiffs to the southeast quarter of Section 36, Township 34 North, Range 12 West of the 6th P. M., in Boyd County, Nebraska, because of a mineral reservation in the State of Nebraska contained in the deed to such quarter section of land which the plaintiffs claim is contrary to the Constitution and laws of the state; and further, to enjoin the State of Nebraska from asserting or claiming any legal right, title, or interest to any mineral, coal, oil, gas, potash, sand, gravel, clay, volcanic ash, tripoli, and saline rights contained on such land. The State demurred to the plaintiffs' petition on the ground that it did not state facts sufficient to constitute a cause of action against the State. The demurrer was overruled. The State refused to plead further and elected to stand upon its demurrer. The trial court entered its decree finding generally for the plaintiffs on their petition and against the defendants. The court ordered and decreed that the title to such real estate be quieted in the plaintiffs and against the reservation of the State of mineral rights and other natural resources, and against all claims of the State or any person or persons claiming by, through, or under the State; and that the State and its officers, various boards, departments, agents, and employees, and all persons, firms, or corporations claiming to act by or through the State be enjoined from claiming any right, title, or interest in said land. The State appealed.

The State sets forth the following assignments of error: (1) The trial court erred in finding that the petition stated a cause of action and in overruling the demurrer of the State; and (2) the trial court erred in quieting title to the mineral rights on said land in the plaintiffs, and in enjoining the State, or any person in its right, from going upon, trespassing upon, prospecting for or attempting to develop any of the mineral or natural resources in or upon said real estate, or asserting or claiming any right, title, or interest therein against the title, interest, and possession of the plaintiffs, or either of them, or their heirs, grantees, or successors in interest.

Due to the length of and involved facts alleged in the petition, we summarize the same.

The petition alleged that on or about December 21, 1894, Collins Veach made application to the proper boards and officers of the State to lease the southeast quarter of Section 36, Township 34, North of Range 12, in Boyd County, in the manner and form then provided by law for leasing common school lands; that for the purpose of and in order to induce and interest people in the leasing of school lands the Legislature of the state by laws duly passed and in force in 1894 and 1895 provided that persons leasing school lands would be and were granted the right to thereafter purchase the real estate leased by them during the terms of the lease upon application made by the holder of the lease to the proper authorities for a contract of purchase and sale of the leased lands in the manner provided by law at the time the lease was executed; and that the application of Collins Veach was duly approved and on February 10, 1895, a lease to the above-described real estate for 25 years was issued and properly recorded.

The petition further alleged that on August 31, 1903, Collins Veach sold, assigned, and transferred the above-described lease and all of his right, title, and interest therein to one Alden A. Barden, which assignment was

in proper form and duly recorded; that on March 4, 1909, Alden A. Barden sold, assigned, transferred, and conveyed to Charles L. Teaquist all his right, title, and interest to the leased real estate, which assignment was properly recorded; that on March 1, 1918, Charles L. Teaquist sold and assigned all his right, title, and interest to the leased real estate to Joe Bowers, which assignment was duly approved and recorded; and that on August 20, 1918, Joe Bowers sold, assigned, and conveyed all of his right, title, and interest in the leased real estate to F. W. Woods, which assignment was duly approved and recorded.

The petition further alleged that Collins Veach, by virtue of the contract entered into with the State on February 10, 1895, to lease the school land above described, then and thereby acquired and had the right during the term of said lease to purchase the real estate in accordance with the laws in force upon the date of the execution of the lease and contract; that by the leasing of the above-described real estate, the State thereby contracted and agreed with Collins Veach that it would sell and by its deed convey title in fee simple to him during the term of the lease of the real estate described upon the surrender of the lease, the rights of the purchaser and seller to be governed by the laws of the State in force upon the date of the execution of the lease; that shortly prior to July 1, 1919, F. W. Woods surrendered this lease and made application to purchase the land conveyed thereby in accordance with the statutes pertaining to such purchase; that a certificate of sale issued to F. W. Woods on July 17, 1919, contained the following provisions, among others: "In case the said F. W. Woods his assigns or legal representatives, shall pay the several sums of money aforesaid, punctually at the times above limited, and in all other respects observe and comply with the laws governing the leasing, selling, and general management of the Educational Lands, the State of Nebraska, will, on the

surrender of this certificate, cause to be made and executed unto the said F. W. Woods his assigns or legal representatives, a Deed conveying said land in fee simple"; that there were four certificates of sale, each covering one quarter of the southeast quarter section above described, and each certificate of sale showed the following words: "All mineral, coal, oil, gas, potash, sand, gravel, clay, volcanic ash, tripoli, and saline rights, are reserved to the state, with right to prospect for and devolop the same"; that on January 13, 1920, the four certificates of sale were assigned to George E. Knoll and Martin S. McDuffee; that on April 27, 1922, a deed was issued by the State to George E. Knoll and Martin S. McDuffee, which deed contained a reservation of the mineral rights in the same language contained in the sale certificates; and that thereafter this quarter section of land was subject to seven conveyances prior to the one to the plaintiffs in this action, each by warranty deed without mention of the mineral reservation in the State.

The petition further alleged that on April 27, 1922, the deed of the State issued in compliance with the certificate of sale, contained the following provision, among others: "To have and to hold the same premises and parcel of land above particularly described, with the appurtenances thereon, unto the said George E. Knoll & Martin S. McDuffee, their heirs and assigns, in fee simple forever."

The petition also alleged that the plaintiffs took possession of the real estate here involved on March 1, 1950, and are now in possession of the same; that they did not have actual knowledge of the mineral reservations contained in the deed from the State and would not have purchased the land had they known of that fact; that they demanded that the sellers, Lena Ableidinger and Walter D. Ableidinger, furnish them with a merchantable title or take such action necessary to clear the title of the reservation in favor of the State,

after attorneys examining the abstract for their loan company had declared the title unmerchantable because of the reservations hereinbefore noted; that the sellers refused to do so; and that the plaintiffs brought this action for the purpose of establishing the rights of the plaintiffs and defendants in the real estate here involved.

This real estate was purchased from Lena Ableidinger and Walter D. Ableidinger by contract which is set out fully in the petition and need not be set forth here.

The petition further alleged that the above-named defendants were the record joint-owners of the real estate; that in the agreement it was agreed that a deed would be executed and placed in escrow in the Spencer State Bank pending payment in full of the purchase price; and that the plaintiffs were denied permission to examine the abstract of title prior to the payment in full of the purchase price, but were assured that the abstract showed a merchantable title.

The petition also alleged that the land described in the certificates of sale and the deeds from the State consisted substantially of sand, gravel, and clay soil, and if the reservation set forth in the certificates of sale and deed were valid and enforcible, then said deed, contrary to its terms, conveyed nothing of value to the grantees therein named, was a sham conveyance, and a fraud upon the grantees; that the State claimed the right at any time through its own officers and agents, employees and departments, or private individuals, contractors, or prospectors to enter upon the land and deprive the grantees and their successors in interest of all rights in and to the real estate, thus not only destroying the title and its merchantability but all use and value of the land to those claiming to hold under the deed above described conveying the fee simple title to the land; and that had the plaintiffs known at the time they entered into the contract with the individual sellers, or at the time they paid the full purchase price, that such a reservation in favor of the State

was in existence and that the title to the real estate was subject to the apparent rights of the State, they would not have been interested in purchasing or owning the real estate.

The relief prayed for was to quiet title in the plaintiffs and to enjoin the State as hereinbefore indicated.

A general demurrer admits all allegations of fact in the pleading to which it is addressed, which are issuable, relevant, material, and well pleaded; but does not admit the pleader's conclusions of law or fact. A general demurrer tests the substantive legal rights of parties upon admitted facts, including proper and reasonable inferences of law and fact which may be drawn from facts which are well pleaded. If the petition states facts which entitle the plaintiff to relief, whether legal or equitable, it is not demurrable upon the ground that it does not state facts sufficient to constitute a cause of action. See Kinney Loan & Finance Co. v. Sumner, 159 Neb. 57, 65 N. W. 2d 240.

The following laws of this state are involved in this appeal. We set forth certain parts thereof that may assist in the determination of this appeal.

Laws of 1877, page 174, provides: "AN ACT To provide for the registry, sale, leasing and general management of all lands and funds set apart for educational purposes, and for the investment of funds arising from the sale of such lands." Section 7 of the act provides: "In all counties where the appraised value of any portion of unsold lands shall exceed seven (7) dollars per acre, the commissioner of public lands and buildings shall, either in person or by agent, attend at such times as the board may direct, but not more than once in any one year, and offer at public auction all the unsold lands, except such as have been leased, to the highest bidder; * * *." The section then provides for the procedure with reference to the sale, and that no lands shall be sold for less than the appraised value, nor offered for

sale, or sold for less than seven dollars an acre in addition to the improvements on the land.

Laws of 1879, page 110, provides: "AN ACT To amend sections 17 and 19 of the act entitled * * *" as given in the title to the 1877 act above. Section 1 of the 1879 act provides, with reference to the amendment of section 17 of the 1877 act: "Whenever any of the lands herein provided for have been offered for sale and not sold for want of bidders, the said board may lease the same on the following conditions: All persons desiring to lease such lands shall file their sealed proposal for the leasing of the same, under the terms and conditions hereinafter set forth, * * *."

Section 2 of the 1879 act provides that section 19 of the 1877 act be amended to read as follows: "The first payment shall be computed to the first day of January or July, as the case may be, next ensuing the date of executing the lease, and such lease shall contain a covenant or contract of the lease, that he or she will promptly pay the rental or interest semiannually, in advance; that no waste shall be committed upon the land, and that the premises shall be surrendered at the expiration of twenty-five years from the first day of January next ensuing after the date of the lease, or sooner with the consent of the board herein referred to; * * *. Any lessee of school or university lands may at any time, not oftener than once in any one year, apply in writing to the county treasurer of the county in which the land is situated, to have such land appraised for the purpose of sale. On the receipt of such application, and the payment of six dollars by such lessee, the county treasurer, * * *." Then it provides the method of appraisal, the surrender of the lease, the filing thereof, that the lessee may purchase said lands at their appraised value, but at not less than seven dollars an acre, that a contract of such sale shall be executed and recorded in all respects in the same manner and have the same force as in case of the public sale of other lands

under the provisions of this act, but in such case the contract shall recite the fact that such sale is made at private sale to a lessee under the provisions of this act.

Laws of 1885, chapter 85, page 335, related to the same subject matter as above noted. Section 1 of the act set forth the duty of the board of commissioners; section 2 provided that the commissioner of public lands and buildings should, under the direction of the board, cause suitable abstracts to be made of all lands owned by the state for educational purposes; section 3 provided the method of appraisement of the lands; section 4 the re-appraisement thereof; section 5 the sale of educational lands and the number of acres that could be purchased by any one person; and section 6 the terms of payment. Section 7 provided: "Payments made at such sale shall be made to the county treasurer, who shall deliver to the person making such payment a receipt therefor, and any person making full payment shall, upon the presentation of his receipt therefor to the board, be entitled to receive a deed from the state." Other provisions of the act need not be referred to.

In 1895, when the school lease on the southeast quarter of Section 36, Township 34, Range 12 in Boyd County was granted to Collins Veach, the legislative act of 1879, heretofore set out in part, was in effect. In 1897, the Legislature repealed in effect sections 1 and 2 of the act of 1879. Laws 1897, c. 71, § 1, p. 318.

In Laws of 1907, chapter 134, page 437, section 1 provided in part as follows: "None of the educational lands shall hereafter be sold except as follows: * * *." On page 440 of this act will be found the following language: "Any lessee who is the holder of an unexpired lease executed prior to July 9, 1897, may make application to purchase the lands described in said lease in the manner provided by law in force at the time of the execution of the said lease; Provided, that all appraisements made for the sale of any of said lands shall be subject to review by the board of educational

lands and funds before the same becomes effective."

In 1913, the law of 1907 relating to this subject was amended, but contained the same provision in the exact language as above stated. Laws 1913, c. 40, § 1, p. 135, which became section 5855, Rev. St. 1913.

The 1915 law amended section 5855, Rev. St. 1913, but contained the same identical language heretofore referred to appearing on page 440 of the Laws of 1907. Laws 1915, c. 103, § 1, p. 246.

In the thirty-sixth extraordinary session of the Legislature in 1918, chapter 7, page 43, the Legislature passed an act which is now sections 72-301 to 72-314, R. R. S. 1943. Section 1 of the act provided: "All common school, university, normal, saline or other public lands, lakes, lake beds, river beds and channels belonging to the state or under its control, and all lands which may hereafter be so owned, and all of such lands which have heretofore been sold or conveyed by the state or by its authority, in the conveyance of which there has been reserved mineral and other valuable substances therein, are reserved to the state, as well as lands that may hereafter be sold, and lands hereafter acquired by the state, shall be included within the provisions of this act, and shall be open to the prospecting for, and the development of, minerals, petroleum, gas, potash and other valuable substances upon conditions herein provided."

In Briggs v. Neville, 103 Neb. 1, 170 N. W. 188, this court sustained the constitutionality of the act of the extraordinary session of the Legislature of 1918, chapter 7, as against the contentions that it violated sections 11, 13, or 15, Article III, of the state Constitution, or the Fourteenth Amendment to the federal Constitution. That case did not, however, involve vested rights that might be acquired by virtue of former legislation pertaining to leases and the purchase of land belonging to the state for educational purposes.

The plaintiffs alleged that the 1918 act was contrary

to and in violation of Article I, section 3, of the Constitution of the state which provides: "No person shall be deprived of life, liberty, or property, without due process of law." The plaintiffs further alleged that the optionee and his successors in interest were deprived of valuable rights and property without due process of law; and that the act of 1918 was contrary to and in violation of Article I, section 16, of the state Constitution which provides: "No bill of attainder, ex post facto law, or law impairing the obligation of contracts, or making any irrevocable grant of special privileges or immunities shall be passed."

The plaintiffs pleaded that the act of 1918 was contrary to said article and section, in that it impaired the obligation of the contract entered into with the State by subsequent legislation; and that the act was contrary to Article I, section 21, of the Constitution of the state which is as follows: "The property of no person shall be taken or damaged for public use without just compensation therefor."

We will discuss the foregoing laws of the state and the constitutional provisions as hereinbefore set forth later in the opinion as the same may be applicable and as occasion requires.

The State contends that a citizen has no vested right in an existing law, so as to preclude its amendment or repeal, and there is no implied promise on the part of the state to protect its citizens against incidental injury occasioned by changes in the law. The State cites Mulloy v. Kyle, 26 Neb. 313, 41 N. W. 1117; Beisner v. Cochran, 138 Neb. 445, 293 N. W. 289; State ex rel. Jehorek v. McKelvie, 111 Neb. 224, 196 N. W. 110; State ex rel. Brown v. McPeak, 31 Neb. 139, 47 N. W. 691; State ex rel. Patterson v. Wenzel, 55 Neb. 210, 75 N. W. 579.

We deem it necessary to briefly analyze the above-cited cases to ascertain their applicability to the issues here presented.

Mulloy v. Kyle, *supra,* decided in 1889, involved the act of 1879 which is the same act under which the plaintiffs in the case at bar claim a vested right to purchase the school land and to obtain a deed in fee simple title to such land as hereinbefore described. In the cited case, a holder of school leases died intestate, leaving a large indebtedness. The county court entered an order for the sale of the school land leases. The administrator assigned duplicate leases to one Boggs, the originals having been lost. Boggs afterwards surrendered the leases and purchased the land. Through mesne assignments, the contracts of purchase were assigned to the defendant Kyle who, without knowledge of any other claim upon the land, paid full value therefor. Two surviving brothers of the deceased Mulloy brought an action to set aside the transfers to defendant Kyle on the grounds that the county court had no jurisdiction or authority to order the sale of the leases, as personal property. The court, after deciding that a lease for a term of 25 years is personal property, considered the contention of the plaintiffs concerning the option provision in the laws of 1879 relating to school lands. The court said: "This option, it may be observed, is not given in the lease itself, but as a general provision of law. (Sec. 15, ch. 80, Comp. Stat.) The provision is, that a lessee may apply in writing to the chairman of the county board to have the land embraced in his lease appraised for the purpose of sale. After such appraisement, the lessee may pay the county treasurer the appraised value of the land, and he shall then be entitled to receive a deed therefor, providing the land shall not be sold for less than $7 per acre. * * * But by the provisions of section fifteen, the right is reserved to the lessee. Until he avails himself of that right he has nothing but a lease. The right is given solely by law. * * * We find nothing in the section which would change the character of the lease."

The State argues that while the above decision dealt

specifically with the question of whether the right constituted a contract to purchase under the statute cited, the general principle is clearly established that the right to purchase was one given solely by statute, not by written lease, and that until the lessee chose to avail himself of that right he held nothing but a lease. The right is given solely by law, and the same situation is true in the case at bar.

The State further argues that the general law might have been left as it was after the act of 1897, whereby the right to purchase was withdrawn, and a lessee of a prior lease would not have been deprived of any vested right. If the Legislature later permitted a reinstatement of this right to purchase, it was merely an exercise of the legislative prerogative. If the Legislature later decided to modify the title which could be given to this class of lessee, where such lessee had not as yet exercised the option, that also was within the discretion of the Legislature. This the Legislature did do by the extraordinary session of 1918, when it reserved the mineral rights in all common school lands owned by the state. Therefore, when F. W. Woods chose to purchase the land in 1919, the offer was limited to a deed to the agricultural lands.

The court held in Mulloy v. Kyle, *supra,* that a lease of real estate for a period of years was personal property. The court indicated that an option granted persons leasing school lands was a contract for the purchase of real estate, but not an interest therein.

The plaintiffs make no contention in the case at bar that any option, including the option granted by the laws of 1895, grants an interest in real estate of any nature.

The State cites the following from 11 Am. Jur., Constitutional Law, § 372, p. 1200, as supporting its position: "There can, in the nature of things, be no vested right in an existing law which precludes its change or repeal, nor vested right in the omission to legislate

on a particular subject. In no case is there an implied promise on the part of the state to protect its citizens against incidental injury occasioned by changes in the law." This citation incorporates the State's contention as heretofore mentioned. This section also states: "Every citizen in making his arrangements in reliance on the continued existence of laws takes on himself the risk of their being changed, and the state incurs no responsibility in consequence of the change proving injurious to his private interests. A repeal or amendment of a statute, however, cannot have the effect of extinguishing vested rights which have been acquired under the former law." This last sentence is applicable to the case at bar, as will be shown later in the opinion.

In 11 Am. Jur., Constitutional Law, § 371, p. 1200, it is said: "Vested rights may be created by the common law, by statute, or by contract. No matter how created, they are entitled to the same protection. The mere fact that the enactment of a statute may have been dictated by public policy does not preclude the acquisition of vested rights thereunder. The failure to exercise a vested right before the enactment of a subsequent statute which seeks to divest it in no way affects or lessens such right. Accordingly, when a claim or right has arisen resting upon a transaction regarded by the law as a quasi contract, there is no just ground for the position that such a claim falls with the repeal of the statute under which the transaction was had."

Applying the above language appearing in section 371, as aforesaid, to the instant case would mean that the act of 1897 repealing the acts creating the option in 1895 did not affect the plaintiffs' rights, nor did the act of 1918, as subsequently will appear by the decisions cited from this jurisdiction.

The State cites Beisner v. Cochran, *supra*. This was a suit for a declaration of the rights and legal relations of the parties under sections 60-435 to 60-444, Comp.

St. Supp. 1937, as affected by chapter 78, Laws 1939. The defendants were the administrative officers of the state charged by law with the enforcement of such statutes. The trial court sustained a general demurrer to the petition and dismissed the action. Prior to 1937, the statutes of Nebraska provided that motor vehicles should be equipped with adequate brakes and lights. In 1937 a statute was passed requiring the owners of motor vehicles to procure annual certificates of inspection showing that brakes, lights, and other equipment on their cars complied with the statutes of the state and the regulations of the administrative department. The statute provided further that a public garage, by meeting certain requirements, could become an authorized inspection station and make a charge for each complete inspection. The plaintiffs operated public garages and made investments in special machinery and equipment to qualify to inspect motor vehicles and make the statutory charge therefor. In 1939 the Legislature passed a new statute with more rigorous requirements with respect to brake and light equipment, and repealed the provisions of the 1937 act requiring compulsory inspection and authorizing official inspection stations. Laws 1939, c. 78, p. 317. The plaintiffs contended that the repeal statute destroyed the value of their special machinery and equipment in a manner violative of the due process clauses of the state and federal Constitutions and also constituted a taking or damaging of private property for public use without just compensation contrary to constitutional prohibitions. The court said: "We think the rule is, that a citizen has no vested right in statutory licenses, permits and privileges. This being true, a license to carry on a particular trade may be recalled by legislative action at any time. No one has a vested right to be protected against consequential injuries arising from a proper exercise of public powers. That the state under its police power may regulate the use of motor vehicles on the public high-

ways cannot be questioned. Consequently, any incidental damage resulting from a legislative invocation of its police power does not give rise to a right to enjoin the act or to claim compensation from the public." We believe this case involving the police power of the state is not applicable to the legal propositions raised in the instant case related to the purchase of school lands.

In the case of State ex rel. Brown v. McPeak, *supra,* the lease granted under the act of 1879 provided for an appraisal of the land every 5 years by three appraisers, one of which was to be appointed by the lessee. An act of 1883 attempted to withdraw the right of the lessee to appoint one of the appraisers. It was held that: "While the legislature may change or modify the remedy it cannot, by a direct act, deprive the party of a substantial contract right." In other words, it was held that the lessee had obtained a substantial right granted by the contract of lease which could not be taken away from the lessee during the life of the contract. This case fails to support the State's contention, but rather favors the plaintiffs' position.

The case of State ex rel. Jehorek v. McKelvie, *supra,* was based upon a factual situation accruing before the enactment of the act of 1918. It holds that mineral reservations made in sales contracts for common school lands in 1917, on the sole authority of a resolution passed by the Board of Educational Lands and Funds, were of no validity and the purchasers were entitled to a deed free and clear of such reservations. At the time there was no provision of law requiring or authorizing the officers of the state, in making sale of the state's common school lands, to make any such mineral reservations as were attempted to be made in the cited case. The court held that the transaction must be governed and the rights of the parties determined by the law in force when the contract of sale was made in 1917. As a consequence the law of 1918 reserving mineral rights in the common school lands to the state could in

no event apply. It is apparent, by citing the above case, that it is the State's contention that the laws of 1918, which were in force in 1919 when the contract of sale was made in the case at bar, governs. The court said that the purchaser paid for a fee simple title and was entitled to a deed that insured him such a title. As we interpret the rule heretofore set out it means all of the law in force and applicable to the transaction at the time the contract of sale was made, not only part of it, meaning not only the law of 1918 but the law of 1915 in force at the time.

In the case of State ex rel. Patterson v. Wenzel, *supra,* a school land lease was issued to S. L. Northrop for a term of 25 years from and after January 1, 1876. Patterson became the lessee by virtue of assignments of the lease from Northrop and those claiming under him. On August 10, 1897, Patterson elected to exercise the option to purchase the land. This was after the Legislature of 1897 repealed the law with reference thereto. He brought an action of mandamus to require the proper officials to enter into a sales contract as provided for by the laws of 1879. The state defended on the grounds (1) that at the time the lease was executed no statute existed authorizing the lessee to purchase at private sale; and (2) that the privilege granted by the provisions of the act of 1879 authorizing the purchase by the lessee at private sale was granted without consideration by the state and could be withdrawn at any time before its acceptance and by the passage of the act of 1897 the state did withdraw the option prior to the election to exercise it. The court said: "We conclude, therefore, that by the passage of the act of 1897 the state intended to and did withdraw from sale all its unsold and unleased school lands and the school lands leased prior to the taking effect of the act of 1879, the lessees of which had not availed themselves of the privilege of purchasing such lands prior to the taking effect of the act of 1897. The district court correctly refused the writ of

mandamus * * *." In the opinion the court further said: "We think the contention of the respondents correct so far as it relates to lessees of school lands whose leases were executed prior to the taking effect of the act of 1879. The case at bar does not require us to decide whether the state could pass a valid law withdrawing the option to purchase from lessees whose leases were executed after the passage of the act of 1879, and we do not, therefore, decide that question." It is obvious that the cited case does not involve the same issues as are involved in the case at bar.

It is apparent that the cases above cited and analyzed do not deal distinctively with the issues here involved. It is true that in some of the cases cited the court held the rights of lessees of state school lands are determined by the law in force governing the leasing of school lands at the time of the execution of the lease. This was also the law in 1895, as heretofore pointed out.

We believe the following to be applicable to the case at bar. In the case of Scotts Bluff County v. State, 133 Neb. 508, 276 N. W. 185, this court held: "Every contract is made with reference to, and subject to, existing law, and every law affecting the contract is read into it and becomes a part thereof. This is true between individuals dealing between themselves by contract, express or implied, and likewise true between individuals and the government." See, also, County of Johnson v. Weber, 160 Neb. 432, 70 N. W. 2d 440; McWilliams v. Griffin, 132 Neb. 753, 273 N. W. 209, 110 A. L. R. 1039; Niklaus v. Miller, 159 Neb. 301, 66 N. W. 2d 824.

This court said, in the case of Todd v. Board of Educational Lands & Funds, 154 Neb. 606, 48 N. W. 2d 706: "The law on the subject in force at the time of the execution of a lease is a part thereof and determines the rights of the lessee. A lease made in compliance with the direction and permission of the Legislature between the state and the lessee is a contract and is property. The rights resulting from the contract vest on its ex-

ecution and delivery. The state may not subsequently by legislation deprive the lessee of any substantial right secured to him by the lease. Constitutional guaranties and prohibitions safeguard it. These include the mandate that no state shall deprive any person of property without due process of law; no state shall enact any law impairing the obligations of a contract; and the property of no person shall be taken or damaged for public use without compensation. State v. Platte Valley Public Power & Irrigation Dist., 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196; Reavis v. State, 140 Neb. 442, 300 N. W. 344; Stanser v. Cather, 85 Neb. 305, 123 N. W. 316; Hile v. Troupe, supra (77 Neb. 199, 109 N. W. 218); State ex rel. Patterson v. Wenzel, 55 Neb. 210, 75 N. W. 579; State ex rel. Beer v. Thayer, 46 Neb. 137, 64 N. W. 700; State ex rel. Brown v. McPeak, 31 Neb. 139, 47 N. W. 691.

"The right to dispose of property is substantial and valuable. It is incidental to and inheres in the constitutional right to acquire and own property. It may not be impaired or defeated by legislation after the right has vested. To take from property one of its elements of value and deny the owner the right to sell or transfer it in any legitimate manner is as much a deprivation of property as if the physical property itself were taken."

In applying the above language to the case at bar this would be equally applicable whether the rights arise from printed words of the lease or the statutes in force at the time granting the rights not printed in the lease as has heretofore been pointed out.

The Legislature by the act of 1897 could not lawfully and constitutionally deprive the lessee of his rights to acquire a fee simple title within the option to purchase by the laws in effect in 1895, and the Legislature could not by its act in 1918 lawfully and constitutionally do so.

In Ritter v. Drainage District, 137 Neb. 866, 291 N. W. 718, this court held: "Where contractual and vested rights are created pursuant to statute, they cannot be

destroyed by a subsequent act of the legislature." The court also said: " 'It has become the established law that a legislative enactment, in the ordinary form of a statute, may contain provisions which, when accepted as the basis of action by individuals or corporations, become contracts between them and the state within the protection of the clause of the federal Constitution forbidding impairment of contractual obligations.' 6 R. C. L. 338, sec. 331. See, also, 12 C. J. 969."

In Kucera v. Kavan, 165 Neb. 131, 84 N. W. 2d 207, this court held: "An option founded upon a valuable consideration cannot be withdrawn before the time specified therein has expired." See, also, Merritt v. Ash Grove Lime & Portland Cement Co., 136 Neb. 52, 285 N. W. 97.

We conclude that the Legislature, by the act of 1897, could not lawfully and constitutionally deprive the lessee of his right to a fee simple title under his option to purchase by the laws in effect in 1895. The Legislature in 1918 could not constitutionally so do. His rights were vested rights which this court protects.

For the reasons given herein, the judgment of the trial court in overruling the State's demurrer should be, and is hereby affirmed.

AFFIRMED.