JOHN STOLLER ET AL., APPELLEES, v. STATE OF NEBRASKA, APPELLANT.

105 N. W. 2d 852

Filed October 28, 1960. No. 34798.

*Clarence S. Beck,* Attorney General, and *Richard H. Williams,* for appellant.

*Fred T. Hanson,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiffs, John Stoller and Lydia Stoller, brought this action against defendant, State of Nebraska, seeking to quiet title to the oil, gas, and mineral rights on described school lands allegedly owned by plaintiffs in Red Willow County, and to enjoin defendant from asserting any rights therein. Defendant filed an answer to plaintiffs' petition, and plaintiffs demurred generally thereto. The demurrer was sustained and, defendant having elected not to plead further, a judgment was rendered in favor of plaintiffs and against defendant which quieted the title in plaintiffs as prayed. Thereupon defendant appealed to this court, assigning that the trial court erred in sustaining plaintiffs' demurrer and rendering judgment for plaintiffs. We do not sustain the assignment.

The sole question presented is one of law, arising out of the judicial construction and application of certain statutes under admitted facts. More particularly, the question is whether the statutory right given a contractual purchaser of school lands to redeem, and his timely exercise of such right after declared forfeiture of such contract by the Board of Educational Lands and Funds, creates a new contract of purchase under statutes then existing, or simply restores to and preserves in the purchaser his original vested contractual rights.

In that connection, plaintiffs' petition as summarized alleged that they were owners of described school lands as tenants in common; that on or about November 22, 1892, such lands were leased by defendant in writing as provided by law to one Josef Kroupa, which lease was duly approved by and is of record in the office of the Board of Educational Lands and Funds, hereinafter called the board; that at the time said lease was executed, statutes were in force and a part of said lease which provided that lessees of school lands should have a right or option on application and surrender of such lease to purchase the leased lands for their appraised value, but

at not less than $7 per acre, and obtain fee simple title thereto, which became a vested right of lessee, his successors, and assigns; that on or about September 4, 1899, lessee Josef Kroupa sold and assigned said lease in writing to Jacob Fichtner for valuable consideration, which assignment was duly approved by and is of record in the office of the board; that on or about January 21, 1908, Jacob Fichtner sold and assigned said lease in writing to G. H. Fichtner for valuable consideration, which assignment was duly approved by and is of record in the office of the board; that on or about August 25, 1917, G. H. Fichtner, being the owner of said lease by said assignments, duly made application to purchase said lands under such right or option; that he surrendered said lease, and on said date two written certificates or contracts of sale were duly executed and delivered to him covering the described lands here involved, which are of record in the office of said board; that contrary to law and the vested rights of G. H. Fichtner as assignee of said lease and option to purchase a fee simple title free of all reservation, there was inserted in each of said certificates of sale a reservation to the state of all oil, gas, and designated minerals on said lands; that on or about March 9, 1937, G. H. Fichtner and wife, Olga Fichtner, sold and assigned said contracts in writing to the Department of Banking of the state for valuable consideration, which assignments were duly approved by and are on file in the office of said board; that on or about March 29, 1937, the Department of Banking duly sold and assigned said certificates of sale and its rights thereunder in writing to plaintiff John Stoller, for valuable consideration, which assignments were duly approved by and are of record in the office of the board, whereby plaintiff John Stoller became owner of the rights of the lessee and his assigns under said option and the rights of the purchaser under the sales made pursuant thereto; that prior to April 8, 1946, said John Stoller completed all payments

required to be made under the contracts of lease and purchase and applied for a deed to the land requesting same to vest title in plaintiffs as joint tenants with right of survivorship; that in response to such application, the state issued and delivered plaintiff a deed designating "John Stoller and/or Lydia Stoller" as grantees, without express language of joint tenancy or survivorship, which cast a cloud on and rendered doubtful the nature of the title intended to be conveyed and vested in grantees; and, that contrary to law and the vested rights of plaintiff John Stoller as assignee to have conveyed to him or to the persons designated by him a fee simple title free of all reservations, the deed issued by the state on April 8, 1946, a copy of which was attached to and made a part of plaintiffs' petition, contained a provision reserving in the state all coal, oil, salt, mineral, and other natural resources. Plaintiffs' prayer was for a judgment quieting title to such oil, gas, and mineral rights in plaintiffs, and declaring them to be owners of said lands as joint tenants with right of survivorship.

Defendant's answer admitted all allegations of plaintiffs' petition except as allegations thereafter made by defendant might tend to controvert same, in which event they were denied. Defendant then alleged that on May 11, 1936, the board, by order pursuant to notice, as provided by law and duly spread upon its official records, declared a forfeiture of the sale contracts theretofore issued to G. H. Fichtner on or about August 25, 1917; that by virtue of statutes then existing, the interest in the land covered by such contracts reverted to the state the same as though no sale had ever been made; that on or about March 10, 1937, pursuant to a statutory right then existent, the purchaser or his assignee, the Department of Banking, paid all delinquencies and interest which had accrued with respect to payments on such sale contracts and redeemed same, which redemption was duly noted and recorded on

the official records of the board; and that by virtue of the forfeiture of 1936 and the redemption of 1937, new sale contracts for purchase of the land involved came into being and were subject to a 1920 amendment of the Nebraska Constitution, Article III, section 20, which prohibited alienation of the mineral rights on state educational lands. Defendant prayed for a judgment quieting title in it to the oil, gas, and mineral reservations inserted in plaintiffs' deed, and prayed for a denial of the relief sought by plaintiffs except with regard to their prayer for an order finding that plaintiffs as grantees in the deed should be held to be joint tenants with right of survivorship.

In the judgment rendered by the trial court sustaining plaintiffs' demurrer to defendant's answer and quieting title to plaintiffs as prayed by them, the court found and adjudged that the declaration of forfeiture alleged in defendant's answer was subject to the right of redemption; that the redemption so prayed had the legal effect of restoring plaintiffs' predecessor in title to all the rights such purchaser had prior to such declaration of forfeiture; that such rights were prior to and not subject to the Constitution of 1920; and that therefore defendant's answer did not constitute a defense to any relief sought by plaintiffs. In that connection, defendant's contention and argument were and are that upon declared forfeiture by the board all interest in the land covered by the lease and contract of sale reverted or turned back to the state, the same as if "such lease or sale had never been made"; that to "redeem" means a "buying back" or a "repurchase"; that "redemption" after declared forfeiture created new contracts of purchase rather than a restoration or preservation of the original contracts; and that since such new contracts came into existence after 1920, then Article III, section 20, Constitution of Nebraska, which prohibited the state from alienating the oil, gas, and mineral rights in making

such contracts, had application and controlled in the situation presented.

Upon such premise also, defendant relied upon section 72-219, Comp. Stat. 1929, as amended by Laws of Nebraska, 1935, Chapter 163, section 12, page 605, which provides in part: "If the amounts due are not paid within ninety days from the date of the service of such notice, the contract of lease or sale may be, by said board, declared forfeited and the lands therein described shall revert to the state the same as though such lease or sale had never been made. * * * Provided, the owner of any contract of sale or lease so forfeited may redeem the same by paying all delinquencies, fees and costs of forfeiture at any time before the advertising of such land to be leased at public auction is completed: * * *."

However, as we view it, such statute has no application here, and assuming, for purpose of argument only, that it did, no contention is alleged or made by defendant that "all delinquencies, fees and costs of forfeiture" were not paid before the "advertising of such land to be leased at public auction" was "completed," as provided in the 1935 act, or were not paid before "such land" was "advertised to be leased at public auction," as provided by section 72-219, Comp. Stat. 1929, as it existed prior to the amendment of 1935.

As we view it, section 3831, Cons. St. 1891, is applicable and controlling in this case. Such section and others in pari materia therewith were in force and a part of the lease contract here involved, which was executed on November 22, 1892, and gave the lessee a right or option to purchase such lands as claimed by plaintiffs. Section 3831, Cons. St. 1891, provides in part: "If any lessee of educational lands shall be in default of the semi-annual rental due the state for a period of six months, or any purchaser of educational lands be in default of the annual interest due the state for one year, the commissioner of public lands and buildings may cause notice to be given to such delinquent lessee or purchaser that,

if such delinquency is not paid within six months from the date of the service of such notice, his lease or sale will be declared forfeited by the board of educational lands and funds. If after such notice the amounts due are not paid within six months from the date of the service of such notice thereof the said contract of lease or sale may be declared forfeited; and the lands therein described shall revert to the state the same as though such lease or sale had never been made; and the order making such forfeiture shall be spread upon the records of the board of educational lands and funds. * * * The forfeiture may be entered by said board after ninety days from the date of such published notice. * * * Provided, the owner of any contract of sale or lease so forfeited may redeem the same by paying all delinquencies and costs at any time before such land is again sold or leased."

In that connection, defendant does not allege or claim that either plaintiffs or their predecessors did not pay all "delinquencies and costs at any time before" such land was "again sold or leased." As a matter of fact, defendant admits otherwise and, upon application, as provided by law and the contracts involved, defendant admittedly deeded the land to plaintiffs after all payments required to be made under the contracts of lease and sale had been completed.

In Chilen v. Commercial Casualty Ins. Co., 135 Neb. 619, 283 N. W. 366, this court concluded that a proviso is a clause engrafted on a preceding enactment for the purpose of restraining or modifying the enacting clause or of excepting something from its operation which would otherwise have been within it. In accordance with the principle that the last expression of the legislative will is the law, in case of conflicting provisions in the same statute, or in different statutes, the last in point of time or order of arrangement prevails.

Under section 3831, Cons. St. 1891, it is the "contract of lease or sale" that is "declared forfeited" by and

"spread upon the records of the board" which the owner thereof "may redeem * * * by paying all delinquencies and costs at any time before such land is again sold or leased." The land itself reverts to defendant absolutely, "the same as though such lease or sale had never been made" only after failure of the owner to redeem the contracts by paying all delinquencies and costs within such prescribed time. When that is timely done, the declared forfeiture is of no force and effect and all of the owner's theretofore-existing contractual rights are restored to and preserved in him as if there had been no delinquencies thereunder. In other words, the right to redeem granted in a contract to lease or purchase school lands under the statutes here involved, which are a part of such contracts, is a vested right of the lessee or purchaser to restore himself to the same position he was in thereunder prior to default and declared forfeiture. We have not been cited, and upon diligent search we have not found, any authority which would permit any other conclusion.

In that connection, the term "redeem" has more than one meaning in law, which may vary under different conditions dependent upon the context in which it is used. It may imply the existence of a debt and the right to pay the obligation rather than a repurchase or sale. It has been defined as meaning to receive back by paying the obligation, or to recover or regain by the fulfillment of some obligation, as by the payment of a debt due. The term as used in the statute here involved may and should be so defined. See, 76 C. J. S., Redeem, p. 175; 53 C. J., Redeem, p. 663, and authorities cited. Also, contrary to defendant's contention, the term "redemption" may be employed in the sense of paying back or satisfying a party's indebtedness rather than with any thought of buying back or repurchasing, or it may mean the payment of an obligation according to its terms, and implies that there is something to be regained or recovered back again rather than a sale, purchase, or exchange.

See 76 C. J. S., Redemption, p. 177, and authorities cited.

As recently as Pfeifer v. Ableidinger, 166 Neb. 464, 89 N. W. 2d. 568, this court, citing authorities, reaffirmed that: "A general demurrer admits all allegations of fact in the pleading to which it is addressed, which are issuable, relevant, material, and well pleaded; but does not admit the pleader's conclusions of law or fact.

"A general demurrer tests the substantive legal rights of parties upon admitted facts, including proper and reasonable inferences of law and fact which may be drawn from facts which are well pleaded."

Therein this court also held: "Every contract is made with reference to, and subject to, existing laws, and every law affecting the contract is read into it and becomes a part thereof. This is true between individuals dealing between themselves by contract, express or implied, and likewise true between individuals and the government.

"The rights of a lessee of school land are determined by the law as it was at the time the lease was made and the lessee may not be deprived of any substantial right resulting from the lease in his favor by subsequent legislation.

"The state by entering into a contract abandons its attributes of sovereignty and binds itself, to the extent of its power to contract, substantially as an individual does who becomes a party to a contract." See, also, State ex rel. Jehorek v. McKelvie, 111 Neb. 224, 196 N. N. W. 110.

In Mulhall v. State, 140 Neb. 341, 299 N. W. 481, this court concluded that the Board of Educational Lands and Funds has no power in conveying land by deed to add restrictions not contained in the original sales contract.

In Reavis v. State, 140 Neb. 442, 300 N. W. 344, this court held that: "Where the state had given a contract to sell school-land, and agreed to give a deed in fee simple when the contract was paid in full, the fact that after

said contract of sale was given the Constitution of Nebraska was amended, making it illegal to deed away mineral rights on school-land, would not prevent the state from conveying said land under the terms of the original contract."

Also, in State ex rel. Jehorek v. McKelvie, *supra,* this court held that: "The acceptance and recording by a vendee of a deed from the governor of the state of Nebraska, conveying a portion of the state's common-school lands, and containing mineral reservations, which reservations were unauthorized and invalid, will not estop such vendee from afterwards demanding a proper deed of conveyance without such invalid reservations." By analogy, of course, such a vendee would also have the right to have his title quieted against such reservation.

Hile v. Troupe, 77 Neb. 199, 109 N. W. 218, dealt with the right, after declared forfeiture, to redeem a duly executed lease of school lands under circumstances comparable with those at bar. In that opinion, this court said: "The statute in force at the time the lease in suit was executed enacted a procedure for the declaration of forfeitures in cases of delinquencies in payments of rents, but with the following proviso: 'Provided, the owner of any contract of sale or lease so forfeited may redeem the same by paying all delinquencies and costs *at any time before such land is again sold or leased.'* Laws 1883, ch. 74, sec. 20. This proviso remained in force until 1903, when it was amended by substituting for the portion thereof printed in italics the words 'at any time before such land is advertised to be leased at public auction' (laws 1903, ch. 100, sec. 17), and the statute as theretofore existing was then repealed. But the matter with which the legislature was dealing was not the exercise of governmental functions merely, but one having reference to the rights and obligations of the state as a party to certain contracts, and it is a well-settled principle that a state is as powerless, under the

operation of section 10, article I of the constitution of the United States, to impair by law its own contractual obligations as it is to affect in like manner the contracts of natural persons. Davis v. Gray, 83 U. S. 203; Hall v. Wisconsin, 103 U. S. 5; People v. Stephens, 71 N. Y. 527. And it is a principle much older than the constitution of the United States 'that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle embaces (sic) alike those which affect its validity, construction, discharge, and enforcement.' Von Hoffman v. City of Quincy, 71 U. S. 535, 550. This language is authoritative and binding, not only upon this court, but upon every branch and functionary of the state government. And it is said by the same high authority: 'Any deviation from its terms, by postponing or accelerating the period of performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are, * * * impairs its obligations.' Green v. Biddle, 8 Wheat. (U. S.), *1, *84. It is clear therefore that the right of redemption created by the above quoted proviso in the statute in force when the lease in suit was made became incorporated with and a part of that instrument. The proviso had nothing to do, as the attorney general contends that it did, with mere procedure or with the remedy by which the state was and is entitled to declare and enforce a forfeiture and a resale or release of the land; but it is entirely distinct therefrom and expressly designed to preserve to the lessee the valuable right to atone for his delinquencies and to redeem his land from forfeiture at any time during the pendency of such proceedings and before their termination by an actual resale or release. That such a right is a contractual one, which is valuable and vested and protected by the above mentioned constitutional guaranty, the authorities leave

us no room to doubt. Bronson v. Kinzie, 1 How. (U. S.) *311; Howard v. Bugbee, 24 How. (U. S.) 461; Cargill v. Power, 1 Mich. 369; Moody v. Hoskins, 64 Miss. 468; Dorrington v. Myers, 11 Neb. 388; Von Hoffman v. City of Quincy, supra. The act of 1903 was therefore, in the respect mentioned, inoperative upon the lease in question." By analogy, such statement has like application to a contract to purchase school lands, which has been duly executed in conformity with a vested right or option contained in the lease at the time of its execution.

For reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendant.

AFFIRMED.

SIMMONS, C. J., participating on briefs.