STATE OF NEBRASKA, BOARD OF EDUCATIONAL LANDS AND
FUNDS, APPELLANT, V. FLOYD O. ALLEN, APPELLEE.
197 N. W. 2d 393
Filed May 12, 1972. No. 38222.

Clarence A. H. Meyer, Attorney General, and Bernard
L. Packett, for appellant.

McGinley, Lane, Mueller, Shanahan & McQuillan and
John A. Gale, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH,
McCOWN, NEWTON, and CLINTON, JJ.

PER CURIAM.

The question is whether an outgoing lessee of common
school land possesses a compensable interest in 16,565
feet of conservation terracing by him under a lease dated
January 9, 1956. The judgment of the district court
declared that he possessed a compensable interest. The
State Board of Educational Lands and Funds appeals.

The lessee possessed no compensable interest in the
conservation terraces. The judgment is reversed and the
cause remanded with directions to render a declaratory
judgment in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

SMITH, J., concurring.

The lease obligated the lessee, Floyd O. Allen, to ob-
serve and carry out soil conservation requirements ac-
cording to the rules and regulations of the board. Breach
of the obligation was ground for cancellation. Allen
terraced two fields in 1963 in compliance with the lease.

Statutory provisions in force on January 9, 1956, enu-
merated improvements for which an outgoing lessee
might recover compensation. Conservation terraces were
not named. See Laws 1953, c. 255, §§ 1 and 2, pp. 862 to

864; §§ 72-240.06 and 72-240.07, R. S. Supp., 1953. The list was exclusive under the facts of the present case. State v. Rosenberger, 187 Neb. 726, 193 N. W. 2d 769 (1972); Banks v. State, 181 Neb. 106, 147 N. W. 2d 132 (1966). In 1957 the Legislature added conservation terraces to the list. See Laws 1957, c. 303, § 1, p. 1107; § 72-240.06, R. S. Supp., 1957.

The statutory provisions in force on January 9, 1956, determined the legal operation of the lease. See Stoller v. State, 171 Neb. 93, 105 N. W. 2d 852 (1960). That proposition was beclouded by references in Banks v. State, *supra*, to legislation enacted in 1957. The references to the 1957 act were erroneous but irrelevant.

On January 9, 1956, conservation terraces did not appear on the statutory list of compensable improvements, and the addition in 1957 came too late to benefit Allen. I therefore concur that he possessed no compensable interest in the conservation terraces.

CLINTON, J., dissenting.

I dissent. I believe the Per Curiam opinion will create confusion in an area which Rosenberger settled and will appear (and in fact is) a flip flop such as I believe occurred in Banks v. State, 181 Neb. 106, 147 N. W. 2d 132; and State v. Bardsley, 185 Neb. 629, 177 N. W. 2d 599.

There are some areas where the rule of stare decisis and the consequent stability and certainty in the law are especially important. This is one of those areas. We know that there are a large number of pending cases involving the question. They can, however, encompass only a few categories. Until there is some stability in the area and the opinions of the court acquire consistency the litigation will continue.

The Per Curiam opinion in this case presents no reasons whatsoever. It therefore decides no law, but just the case. The concurring opinion which accompanies it presents what I believe is a mistaken reason. The foundation of that opinion is the statement: "The statu-

tory provisions in force on January 9, 1956, determined the legal operation of the lease." Stoller v. State, 171 Neb. 93, 105 N. W. 2d 852, is cited. The proposition is abstractly correct but not as applied in this case. What Stoller really held was that the State could not *unilaterally* make changes in the lease adversely affecting the rights of the tenant. Syllabi 5 and 6 of Stoller are as follows: "5. The rights of a lessee of school lands are determined by the law as it was at the time the lease was made and the *lessee may not thereafter be deprived of any substantial right resulting from the lease in his favor by subsequent legislation. . . .* 6. *The state* by entering into a contract abandons its attributes of sovereignty and *binds itself, to the extent of its power to contract, substantially as an individual does who becomes a party to a contract."* (Emphasis supplied.)

In this case the lease required that Allen follow conservation practices but without specifying what they were. In 1957 the Legislature made conservation terracing compensable. Thereafter the Board approved plans for conservation terracing by general regulation and required Allen under threat of forfeiture to do certain terracing which is here involved. This he did in reliance on the statute. All of this was a *bilateral change* in the lease contract made by the Board and the Legislature under their constitutional power of management and which changes were accepted by Allen. He clearly is entitled to compensation under the terms of his contract as amended by the statute and accepted by him.

In the Stoller case this court also said: "Every contract is made with reference to, and subject to, existing law, and every law affecting the contract is read into it and becomes a part thereof. This is true between individuals dealing between themselves by contract, express or implied, and *likewise true between individuals and the government."* (Emphasis supplied.) I take it that no one would question that such "existing law" includes the Constitution. Article VII, section 1, says:

"The *general management* of all lands . . . shall be vested, *under the direction of the Legislature,* in . . . the Board of Educational Lands and Funds." (Emphasis supplied.) It can hardly be questioned that the Board and the Legislature have the same powers of management and the same duties that any other trustee has in the absence of some limiting provisions in the trust instrument (or here, in the Constitution).

The dissent in Rosenberger and the dissent in Banks completely ignore the "general management" provision of the Constitution. They ignore the unique nature of the "contractual" provisions which rise out of the statutes pursuant to the "management" power of the Constitution. The unique nature of the compensable interest of the lessee was completely analyzed and lucidly set forth in the concurring opinion of Carter, J., in the Banks case and need not be reiterated here.

Nowhere has it been pointed out how the duty of a trustee is violated when the trustee in effect says to the tenant (through the statutes) i.e., "When the lease is transferred or the land is sold, I will see to it that you are reimbursed by the new tenant or the purchaser, but only to the extent that your improvements have added to the value of the land and in no event to exceed your cost." These limitations upon reimbursement which found their genesis in the concurring opinion of Carter, J., in Banks and were later enacted by the Legislature into law, Laws 1967, c. 467, pp. 1452 to 1457; now §§ 72-240.10 to 72-240.24, R. R. S. 1943, and further defined and limited in Rosenberger, completely protects the trust corpus from invasion.

The improvements which the Legislature and the Board required or encouraged the tenant to make in order to make the land productive was simply carrying out the management powers under the Constitution and the provisions for reimbursement as limited by statute and the opinions of this court are clearly within the ordinary powers of a trustee. There is no principle of

trust law which requires a trustee to unjustly enrich itself or to take unconscionable or technical advantage. A trustee within its authority is bound by its contracts just as much as any other person.

The Restatement of Trusts sets forth pretty much the common law of trusts and to establish my point I will make reference thereto. I find no Nebraska cases contradicting the principles I will cite. While a trustee is personally liable to those with whom he deals in administering the trust, he is entitled to indemnity out of the trust estate if liability was properly incurred by him. Restatement, Trusts 2d, § 261, p. 2. Creditors may reach the trust property by proceeding in equity. Restatement, Trusts 2d, § 267, p. 12. Sections 169 to 196, Restatement, Trusts 2d, set forth pretty generally the powers of the trustee and I will make reference to some of them. The trustee must exercise the same care and skill as a man of ordinary prudence would exercise in dealing with his own property. Restatement, Trusts 2d, § 174, p. 379. He has the duty to use reasonable care and skill to preserve the trust property. Restatement, Trusts 2d, § 176, p. 381. He has a duty to make the trust property productive. Restatement, Trusts 2d, § 181, p. 391. He has such powers as "are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust." Restatement, Trusts 2d, § 186, p. 399. He is in his discretionary powers "subject to control by the courts" only for an abuse of discretion. Restatement, Trusts 2d, § 187, p. 402. He has the power to lease "for such periods and with such provisions as are reasonable." Restatement, Trusts 2d, § 189, p. 412.

The legislative act amending the statute to include conservation terraces was enacted in 1957. The terraces were constructed by Allen in 1963. They are a compensable improvement under the Laws of 1957, chapter 303, section 1, page 1107. The record here establishes that they were authorized improvements in

fact. There was here the same kind of consent which existed in Banks. In any event they are not one of the listed improvements where consent was required.

The Constitution entrusts to the Board of Educational Lands and Funds and the Legislature "general management" of the trust lands. Pursuant to that power of management the Board required "conservation terracing" and the Legislature authorized compensation from the new purchaser on the making of a lease to a new lessee or sale of the lands. In reliance upon the direction of the Board and the statute, the lessee constructed the terracing. This amounts to a mutual amendment of the contract. Allen clearly has a compensable interest under the Constitution and the statute.

BOSLAUGH and McCOWN, JJ., join in this dissent.